## UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MADELINE PAVEK, ETHAN SYKES, DSCC, and DCCC,<br><br>      Plaintiffs,<br><br> v.<br><br>STEVE SIMON, in his official capacity as the Minnesota Secretary of State,<br><br>      Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

MADELINE PAVEK, ETHAN SYKES, DSCC, and DCCC (together, "Plaintiffs") file this Complaint for Declaratory and Injunctive Relief against Defendant STEVE SIMON, in his official capacity as the Minnesota Secretary of State, and allege as follows:

### NATURE OF THE CASE

1. This case concerns the constitutionality of a Minnesota law that creates an unlevel playing field in Minnesota's elections by arbitrarily favoring, in all of the State's general elections, candidates of a single political party, based entirely on their party affiliation. *See* MINN. STAT. § 204D.13(2) (the "Ballot Order Statute"). The arbitrary, across-the-board advantage conveyed by the Ballot Order Statute is the result of a phenomenon known as "position bias" or the "primacy effect," whereby the candidate listed first in a race receives an electoral advantage over all candidates listed below—an advantage that is solely the result of being listed first on the ballot. Conversely, the candidates whose names are not listed first suffer an increasing electoral disadvantage as their names appear further and further down the list (e.g., in second, third, and fourth position and beyond), that is similarly due solely to their ballot position.

2.      In order to diffuse the impact of this effect, many states rotate the order of candidates in elections. In fact, Minnesota itself does exactly that both in primary elections and for nonpartisan offices in general elections—in both cases, employing a precinct-by-precinct rotation system to determine candidate name order. *See* MINN. STAT. § 206.61(5); MINN. R. 8220.0825; OFFICE OF THE MINN. SEC'Y OF STATE STEVE SIMON, Order of Names and Offices on the Ballot, https://www.sos.state.mn.us/elections-voting/how-elections-work/order-of-names-and-offices-on-the-ballot/ (last visited Nov. 25, 2019). The stated purpose for this rotation across precincts is "so that each name appears on the machines or marking devices used in a municipality substantially an equal number of times in the first, last, and in each intermediate place in the list or group in which they belong." MINN. STAT. § 206.61(5).

3.      But in general elections, when the candidates from different political parties face off against each other for the opportunity to represent the people of Minnesota, the Ballot Order Statute mandates that the advantages of the primacy effect be conferred entirely upon the candidates of a single political party. This is because the Ballot Order Statute requires a fixed ballot order in partisan races on the general election ballot, under which the major party candidates must be listed in reverse order based on the average number of votes that their party received in the last state general election. *See* MINN. STAT. § 204D.13(2). The result is a state-mandated, systemic, and entirely arbitrary advantage that confers to a single political party and all of the candidates who affiliate with it, for no other reason than their political affiliation.

4.      In the upcoming November 2020 election, the Ballot Order Statute will systemically and arbitrarily disadvantage all candidates who affiliate with Minnesota's state Democratic Party, the Democratic-Farmer-Labor Party ("DFL"). This is because, in

the last state general election, of the four parties that qualified as "major political parties" under Minnesota law, DFL commanded the highest average vote share. Candidates affiliated with the Republican Party garnered the second highest average vote share, while the Grassroots-Legalize Cannabis Party and Legal Marijuana Now Party obtained the third and fourth highest average vote shares, respectively. As a result, the Ballot Order Statute requires that, in the upcoming November 2020 general election, all candidates who affiliate with the Legal Marijuana Now Party will be listed first in every partisan race, up and down the ticket. The names of those candidates will be followed by candidates from the Grassroots-Legalize Cannabis and Republican Parties respectively. DFL-affiliated candidates will always be listed last of all of the major party candidates.

5.     This litigation is brought by a group of Plaintiffs who have supported and intend to continue to support DFL candidates in Minnesota, all of whom, absent an order from this Court, are guaranteed to suffer injury as a result of the Ballot Order Statute in the coming 2020 general election. They include three individual Minnesota voters, as well as DSCC, a political committee whose central mission is to support Democratic candidates for U.S. Senate, including for Minnesota's two U.S. Senate seats, one of which will be up for election in 2020, and DCCC, a political committee whose central mission is to support Democratic candidates for the U.S. House of Representatives, including for Minnesota's eight congressional districts, all of which will also be on the ballot in 2020.

6.     Binding precedent from the U.S. Supreme Court and U.S. Court of Appeals for the Eighth Circuit require the invalidation of the Ballot Order Statute. Specifically, in *Mann v. Powell*, 314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970), the only case in which the Supreme Court has considered a challenge to a state practice that would have given certain types of candidates the advantage of being placed first on the ballot, the

Court summarily affirmed the lower court's preliminary injunction, which required that the state use a ballot order system that gave candidates an equal opportunity to be listed first. And in *McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980), a case which remains good law to this day, the Eighth Circuit found unconstitutional a North Dakota ballot order statute that listed candidates based on the number of votes received by their political party in the prior congressional election. Minnesota's Ballot Order Statute is not meaningfully distinct, and must similarly be invalidated.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

8.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343, because the matters in controversy arise under the Constitution and laws of the United States.

9.      This Court has personal jurisdiction over the Defendant, the Secretary of State, who is sued in his official capacity only.

10.      Venue is proper in the Saint Paul Division of the U.S. District Court in the District of Minnesota pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events that gave rise to Plaintiffs' claims occurred there.

11.      This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12.      Plaintiff MADELINE PAVEK is a resident of and is a registered voter in Minneapolis, Minnesota, and has been registered to vote in Minnesota since 2016. Ms. Pavek has voted consistently for DFL candidates and intends to do so again in the

upcoming 2020 general election. If the Court does not enjoin the Ballot Order Statute in advance of that election, all of the candidates that Ms. Pavek supports will be consistently, systemically, and arbitrarily disadvantaged as a direct result of the Ballot Order Statute. Ms. Pavek will personally suffer serious, irreparable injury because of the Ballot Order Statute, both due to the dilution of her vote and the burden on her efforts to help elect DFL candidates. Her vote for DFL candidates will be diluted relative to the votes for the voters who affiliate with the candidates listed first in each of those races, because her vote's weight and impact will be decreased—and the weight and impact of votes cast for first-listed candidates increased—by the votes accruing to the first-listed candidates solely due to their position on the ballot. Ms. Pavek has been actively engaged in efforts to help elect DFL candidates in Minnesota and serves as the statewide Political Director for the Minnesota Young DFL and the Stonewall DFL, which is the Party's LGBTQ caucus, but the Ballot Order Statute makes Ms. Pavek's efforts to elect DFL candidates far more difficult than it would be if the playing field were level or fair. The Ballot Order Statute, unless enjoined, will burden Ms. Pavek's ability to engage in effective efforts to elect DFL candidates by demanding more time and resources to achieve her mission to overcome the inherent disadvantage that Minnesota's Ballot Order Statute builds into the system against those candidates.

13.     Plaintiff ETHAN SYKES is a nineteen-year-old resident of and registered voter in Butterfield, Minnesota. Mr. Sykes will be voting for the first time in a general election in November 2020 and intends to vote for DFL candidates. If the Court does not enjoin the Ballot Order Statute prior to that election, all of the candidates that Mr. Sykes supports will be consistently, systemically, and arbitrarily disadvantaged as a direct result of the Ballot Order Statute. Mr. Sykes will personally suffer serious, irreparable injury

because of the Ballot Order Statute, both due to the dilution of his vote and the burden on his efforts to help elect DFL candidates. His vote for DFL candidates will be diluted relative to the votes for the voters who affiliate with the candidates listed first in each of those races, because his vote's weight and impact will be decreased—and the weight and impact of votes cast for first-listed candidates increased—by the votes accruing to the first-listed candidates solely due to their position on the ballot. Mr. Sykes has been actively engaged in efforts to help elect DFL candidates in Minnesota through his efforts as a member of the Minnesota State University Mankato College Democrats, but the Ballot Order Statute makes Mr. Sykes efforts to elect DFL candidates far more difficult than it would be if the playing field were level or fair. The Ballot Order Statute, unless enjoined, will burden Mr. Sykes ability to engage in effective efforts to elect DFL candidates by demanding more time and resources to achieve his mission to overcome the inherent disadvantage that Minnesota's Ballot Order Statute builds into the system against those candidates.

14.    Plaintiff DSCC is the national senatorial committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). Its mission is to elect candidates of the Democratic Party to the U.S. Senate, including in and from Minnesota. DSCC works to accomplish its mission by, among other things, assisting state parties throughout the country, including in Minnesota. In 2018, DSCC made contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Senate candidates who affiliate with the DFL. In 2020, there will be a Senate election in Minnesota, and DSCC will work to elect the DFL candidate. As a result, DSCC again intends to make substantial contributions and expenditures to support the DFL candidate for U.S. Senate in Minnesota in 2020. The Ballot Order Statute directly harms DSCC because it frustrates DSCC's mission by putting the DFL candidates in all partisan elections, including elections for U.S. Senate, at an

unfair, arbitrary, and artificial electoral disadvantage. Most immediately, DSCC will have to expend and divert additional funds and resources on get out the vote ("GOTV"), voter persuasion efforts, and other activities in Minnesota, at the expense of its efforts in other states, to combat the effects of the Ballot Order Statute in the 2020 general election for U.S. Senate in Minnesota.

15.     Plaintiff DCCC is the national congressional committee of the Democratic Party as defined by 52 U.S.C. § 30101(14). DCCC's mission is electing Democratic candidates to the U.S. House of Representatives from across the United States, including from Minnesota's eight congressional districts. DCCC works to accomplish its mission by, among other things, assisting state parties throughout the country, including in Minnesota. In 2018, DCCC made contributions and expenditures in the millions of dollars to persuade and mobilize voters to support Democratic congressional candidates, including in Minnesota. For 2020, DCCC has identified at least one congressional district in Minnesota as a targeted race, in which it will expend significant resources to support the DFL candidate. Overall, in 2020, DCCC expects to make contributions and expenditures in the tens of millions of dollars to persuade and mobilize voters to support Democratic candidates in congressional elections around the country, including in Minnesota. The Ballot Order Statute directly harms DCCC because it frustrates DCCC's mission and efforts to elect DFL candidates to the U.S. Congress in Minnesota by putting the DFL candidates at an unfair, arbitrary, and artificial electoral disadvantage. Most immediately, DCCC will have to expend and divert additional funds and resources on GOTV, voter persuasion efforts, and other activities in Minnesota, at the expense of its efforts in other states, in order to combat the effects of the Ballot Order Statute in getting DFL candidates elected in Minnesota in the 2020 general election.

16.     Defendant Steve Simon is the Secretary of State of Minnesota and is named as a Defendant in his official capacity. He is the State's chief elections officer and, as such, is responsible for the administration and implementation of election laws in Minnesota, including the Ballot Order Statute. *See* MINN. STAT. § 204D.13(2). Among many other duties, the Secretary is specifically responsible for adopting "rules for preparation . . . of the state general election ballot." MINN. STAT. § 204D.11(1). The Secretary acted under color of state law at all times relevant to this action.

## STATEMENT OF FACTS AND LAW

17.     Persons involved in politics have long suspected that ballot order matters. It is for this reason that many jurisdictions (including Minnesota, albeit not in partisan general election races) rotate the order of candidates' names across ballots.

18.     In states that select ballot order by lottery, "winning" that lottery is cause for celebration. This is because it has long been widely believed that the first-listed candidate is more likely to win. At the very least, political veterans have long held the view that should a candidate find themselves in a close election, ballot position could very well be the factor that decides the race.

19.     In recent years, this particular piece of political mythology has become increasingly indisputable as a matter of fact. Researchers have long understood that, due to a phenomenon known as "position bias" or the "primacy effect," individuals manifest bias toward selecting the first in a set of visually-presented options.

20.     There was a time when there was some debate as to whether this phenomenon would carry over into the decisions made in the voting booth, but the recent (and extensive) studies on this question are in agreement: the order in which candidates are listed on the ballot has an impact on their electoral success, period. *See, e.g.*, *Jacobson v. Lee*, No. 4:18-

cv-262-MW/CAS, 2019 WL 6044035, at *12 (N.D. Fla. Nov. 15, 2019) (summarizing how 84% of 1,086 unique tests across 70 years of social science revealed primacy effects in elections).

21.     Even without the advantage of the robust body of empirical research that now overwhelmingly supports this proposition, there is a long history of cases finding that the primacy effect has a reason and meaningful impact on elections. *See McLain*, 637 F.2d at 1166 (affirming "finding of ballot advantage in the first position"); *Sangmeister v. Woodard*, 565 F.2d 460, 468 (7th Cir. 1977) ("[T]he trial court's conclusion that 'top placement' on the ballot would be an advantage to the plaintiff' is supported by substantial evidence."); *Jacobson*, 2019 WL 6044035, at *17 ("Plaintiffs have proven—and this Court hereby finds—that candidates of the major parties in Florida receive an average primacy effect vote of approximately five percent when listed first in their office block on the ballot."); *Graves v. McElderry*, 946 F. Supp. 1569, 1576 (W.D. Okla. 1996) (finding "some measure of position bias exists in Oklahoma's" elections); *Kautenburger v. Jackson*, 333 P.2d 293, 294-95 (Ariz. 1958) ("[I]t is a commonly known and accepted fact that where there are a number of candidates for the same office, the names appearing at the head of the list have a distinct advantage."); *Gould v. Grubb*, 536 P.2d 1337, 1338 (Cal. 1975) (describing finding of position bias as "consistent with parallel findings rendered in similar litigation throughout the country"); *Akins v. Sec'y of State*, 904 A.2d 702, 706 (N.H. 2006) (affirming finding that "the primacy effect confers an advantage in elections"); *Matter of Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct. 1970) (recognizing "there is a distinct advantage to the candidate whose name appears first on a ballot" and this phenomenon is "so widespread and so universally accepted as to make it almost a matter of public knowledge"); *State ex rel. Roof v. Bd. of Comm'rs*, 314 N.E.2d 172, 177 (Ohio

1974) (recognizing "it is generally agreed" that "candidates whose names appear at the beginning of the list receive some votes attributable solely to the positioning of their names").

22.     Far from diffusing the effect of name order, Minnesota's Ballot Order Statute systemically confers the advantages that follow from being listed first on the ballot to all candidates of one political party, based on their party affiliation.

23.     This is because the Ballot Order Statute mandates that, for every single partisan election listed on a general election ballot in the state, the major party candidates must be listed in reverse order of the average vote that their political party received in the last state general election. *See* MINN. STAT. § 204D.13(2). Minor party and unaffiliated candidates are listed by lot. *See id.* § 204D.13(3) ("[T]he secretary of state shall determine by lot the order of candidates nominated by petition."); Order of Names and Offices on the Ballot, *supra*.

24.     Minnesota's current major political parties are the DFL, the Grassroots-Legalize Cannabis Party, the Legal Marijuana Now Party, and the Republican Party of Minnesota. *See* MINN. STAT. § 200.02(7) (providing statutory definition of "major political party"); OFFICE OF THE MINN. SEC'Y OF STATE STEVE SIMON, Political Parties, https://www.sos.state.mn.us/elections-voting/how-elections-work/political-parties/   (last visited Nov. 25, 2019) (listing major political parties). The Grassroots-Legalize Cannabis Party and the Legal Marijuana Now Party became major political parties on January 1, 2019, based on their electoral performance in the 2018 state general election.

25.     The order of the major political parties on the state general election ballot is determined based on the average number of votes each party received in the previous general election, which is calculated by "dividing the total number of votes counted for all

of the party's candidates for statewide office at the state general election by the number of those candidates at the election." Minn. Stat. § 204D.13(2).

26.     In the 2018 state general election, the DFL statewide candidates received an average of 1,359,707 votes; the Republican Party of Minnesota statewide candidates received an average of 1,081,464 votes; the Grassroots-Legalize Cannabis Party statewide candidates received an average of 145,748 votes; and the Legal Marijuana Now Party statewide candidates received an average of 98,588 votes. *See* Office of the Minn. Sec'y of State Steve Simon, 2018 General Election Results, https://www.sos.state.mn.us/elections-voting/2018-general-election-results/ (last visited Nov. 25, 2019).

27.     Accordingly, under the Ballot Order Statute the 2020 ballot order will be: (1) Legal Marijuana Now, (2) Grassroots-Legalize Cannabis, (3) Republican Party, (4) DFL. The major party candidates will be followed by the minor party and unaffiliated candidates, if any.[1] DFL candidates have no chance of being listed first unless no other major party candidate is vying for the seat in question.

28.     Thus, the Ballot Order Statute, on its face, treats similarly situated major political parties differently, to the detriment of candidates who share a political party affiliation with candidates who performed well in an earlier, unrelated election.

29.     Candidates who share their political party affiliation with the party that performed best, on average, in statewide races during the last general election face a systemic, arbitrary, and artificial disadvantage as compared to their otherwise similarly situated rivals, directly and solely as a result of the Ballot Order Statute, which lowers their

---

[1] Plaintiffs do not challenge the state's decision to place minor party and unaffiliated candidates after candidates nominated by a major political party. *See* Minn. R. 8220.0825(3); Order of Names and Offices on the Ballot, *supra*.

electoral prospects for no other reason than that they share a party affiliation with candidates that performed well in a different and unrelated election.

30.     This state-mandated preference for the candidates of some major parties over others stands in stark contrast to the ballot order system that the State employs for minor party and nonpartisan candidates on the very same ballot, as well as in partisan primary elections. *See* MINN. STAT. § 206.61(5); MINN. R. 8220.0825; Order of Names and Offices on the Ballot, *supra*.

31.     Minnesota employs a precinct-by-precinct rotation system to determine candidate name order for nonpartisan offices in general elections and for all candidates in partisan primary elections. *See* MINN. STAT. § 206.61(5); MINN. R. 8220.0825; Order of Names and Offices on the Ballot, *supra*.

32.     Minnesota's election laws recognize that the purpose of rotation across precincts is "so that each name appears on the machines or marking devices used in a municipality substantially an equal number of times in the first, last, and in each intermediate place in the list or group in which they belong." MINN. STAT. § 206.61(5).

33.     The only rational reason to employ such rotation is to diffuse the effects of primacy effect in elections. Thus, Minnesota law implicitly recognizes that ballot order impacts elections and operates to neutralize that effect in primaries and in general elections among nonpartisan candidates.

34.     But if a fixed ballot order is inappropriate at the primary level, because it would render those elections unfair—or even for nonpartisan offices on the general election ballot—it cannot be that those same concerns do not persist into the general election when it comes to partisan candidates. If anything, those concerns are all the more momentous when the candidates of different political parties face off against each other.

35.     Yet, under the operation of the Ballot Order Statute, the order of partisan candidates in general elections on every single one of Minnesota's general elections ballots is fixed, and as a direct result all DFL candidates will be at an electoral disadvantage in partisan elections up and down the ballot in the 2020 general election, for no other reason than their position on the ballot, determined by the outcome of a different, unrelated election. The result will be severe and irreparable harm to the Plaintiffs, the candidates that they support, and the voters who support them.

36.     The Eighth Circuit has previously found that ballot order statutes that favor specific categories of candidates over others similarly situated burden the fundamental right to vote, and cannot withstand even the most deferential level of scrutiny. *McLain*, 637 F.2d at 1167.

37.     This is in line with decision after decision by federal and state courts that have considered challenges to similar schemes and easily and consistently found them to be unconstitutional. *See, e.g.*, *Jacobson*, 2019 WL 6044035, at *23-24 (finding ballot order statute that required that candidates be listed in order of their party's performance in the last gubernatorial election unconstitutional and permanently enjoining its operation); *see also Sangmeister*, 565 F.2d at 469 (affirming the district court's finding that practice of clerks placing their own political party first on ballots was a constitutional violation); *Graves*, 946 F. Supp. at 1582 (finding statute that mandates placement of one party at the top of every general election ballot unconstitutional and permanently enjoining its operation); *Netsch v. Lewis*, 344 F. Supp. 1280, 1280 (N.D. Ill. 1972) (finding statute that grants priority in listing on the ballot to be unconstitutional); *Kautenburger*, 333 P.2d at 295 (affirming trial court's finding that listing names in alphabetical order on all voting machines was unconstitutional); *Gould*, 536 P.2d at 1338 (finding that the allocation of the

first ballot position based on incumbency or alphabetical order is unconstitutional); *Elliott v. Sec'y of State*, 294 N.W. 171, 173 (Mich. 1940) (finding that failure to rotate candidate names on ballot was inconsistent with constitutional principles); *Holtzman*, 62 Misc. 2d at 1024-25 (finding legislation that put the incumbent's name first on every ballot was unconstitutional).

38.     All of these cases are consistent with *Mann v. Powell*, the only opportunity that the U.S. Supreme Court has had to consider the constitutionality of a ballot ordering system that gave one category of candidates a systemic advantage. In those proceedings, the district court issued a preliminary injunction suspending an Illinois practice that ordered candidates on the ballot based on the order in which their nominating petition were received and, when two nominating petitions were received simultaneously, favored incumbents. *Mann*, 314 F. Supp. at 679. The district court found the systemic favoring of incumbents— even when only to break a tie—unconstitutional, and issued a preliminary injunction requiring that the ballot order in the upcoming election be determined by "nondiscriminatory means by which each" similarly-situated candidate (i.e., those whose petitions were received at the same time) must "have an equal opportunity to be placed first on the ballot." *Id.* The U.S. Supreme Court summarily affirmed that decision. *Mann v. Powell*, 398 U.S. 955 (1970).

39.     As noted, the Eighth Circuit found that favoring one class of candidates over others similarly situated in this way could not survive even rational basis scrutiny. This is even more the case in this particular instance, where Minnesota can offer no plausible administrative justification for the rule. This is because, as discussed, its law elsewhere recognizes the advantage conferred by the ballot order effect and, to combat it, employs a precinct-by-precinct rotational lottery system in primary elections for all candidates and

even in general elections, for nonpartisan offices. *See* MINN. STAT. § 206.61(5); MINN. R. 8220.0825; Order of Names and Offices on the Ballot, *supra*.

40.     Thus, can be no question as to whether Minnesota *could* feasibly diffuse the ballot order effect for major political party candidates in general elections, it affirmatively chooses not to do so. And in making that choice, it unconstitutionally puts its thumb on the scale in favor of the candidates of one political party above all others.

## CLAIMS FOR RELIEF

### COUNT I
**First and Fourteenth Amendments**
**U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202**
**Undue Burden on the Right to Vote**

41.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 40, as though fully set forth herein.

42.     A court considering a challenge to a state election law must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiff seeks to vindicate against the justifications put forward by the State for the burdens imposed by the rule. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

43.     "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted); *see also Jacobson*, 2019 WL 6044035, at *22 ("[T]his Court will scrutinize the State's asserted interests and justifications in a level of detail greater than the cursory examination afforded under the rational-basis standard."); *Gould*, 536 P.2d at 1342-43 (applying "close scrutiny" standard of review, because ballot order system "impose[d] a

very 'real and appreciable impact' on the equality, fairness and integrity of the electoral process"); *Akins*, 904 A.2d at 705 (applying strict scrutiny to determining state constitutionality of ballot order system that prioritized candidate names alphabetically).

44.     Minnesota's Ballot Order Statute, which provides an unfair, arbitrary, and artificial advantage to candidates who affiliate with a specific political party simply because of that political affiliation, burdens the right to vote of those voters—including the individual Plaintiffs and the constituents of the organizational Plaintiffs—who support candidates of other similarly situated major political parties, because it dilutes their vote relative to the votes for the favored political party candidates that the Statute requires be listed earlier on the ballot. *See McLain*, 637 F.2d at 1167 (describing system of listing candidates based on the number of votes received by that same party in the prior North Dakota congressional election as "burden[ing] the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the fourteenth amendment"); *see also Gould*, 536 P.2d at 1343 (describing statute that prioritized ballot order by incumbency as "inevitably dilut[ing] the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class").

45.     The weight and impact of the votes of the individual Plaintiffs as well as the constituencies of the organizational Plaintiffs are consistently and arbitrarily decreased— and the weight and impact of the votes for the statutorily favored party's candidates, increased—by the votes accruing to the earlier-listed candidates solely due to their earlier position on the ballot as mandated by the Ballot Order Statute.

46.     The Ballot Order Statute is not justified by any legitimate state interest, let alone a compelling state interest, that is sufficiently weighty to justify the burden on the

right to vote. *See e.g.*, *McLain*, 637 F.2d at 1167; *Jacobson*, 2019 WL 6044035, at *22; *Gould*, 536 P.2d at 1346-47; *Holtzman*, 62 Misc. 2d at 1024.

47.     Thus, the burdens imposed by the Ballot Order Statute on the fundamental right to vote outweigh any alleged benefits of the law.

48.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries to their fundamental right to vote, including, most immediately, in the upcoming general election to be held in November 2020.

## COUNT II
### Fourteenth Amendment
### U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. §§ 2201, 2202
### Disparate Treatment in Violation of the Right to Equal Protection

49.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 48, as though fully set forth herein.

50.     The Equal Protection Clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

51.     This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

52.    Minnesota's Ballot Order Statute treats one major political party—and its candidates, members, constituencies, and the voters and organizations who support it—differently from the other major political parties, putting it at an unfair and arbitrary electoral disadvantage based solely on the performance of that party's candidates in the last state general election, in violation of the Equal Protection Clause. *See McLain*, 637 F.2d at 1167 (holding system of listing candidates based on number of votes received by that same party in the prior North Dakota congressional election unconstitutional, in violation of Equal Protection Clause); *see also Mann v. Powell*, 333 F. Supp. 1261,  1267 (N.D. Ill. 1971) (enjoining ballot order system of listing candidates based on prior electoral success—due to "seniority" or "incumbency"—and stating "[t]he Fourteenth Amendment requires all candidates, newcomers and incumbents alike, to be treated equally"); *Netsch*, 344 F. Supp. at 1281 (holding statute prescribing ballot order by past electoral success violated Fourteenth Amendment because it denied "the right to equal protection"); *Holtzman*, 62 Misc. 2d at 1024 (holding system requiring placement of incumbent at top of ballot unconstitutional because it violated Equal Protection Clause); *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted).

53.    Minnesota's Ballot Order Statute is not even rationally related to a legitimate state interest to justify favoring one similarly situated political party over others (and the serious and irreparable injury that results to the Plaintiffs because of that state-mandated favoritism), by ensuring that all candidates running in future elections under the auspices of those parties are listed earlier on the ballot and thus receive an unfair electoral advantage solely resulting from their positions of primacy. *See, e.g.*, *McLain*, 637 F.2d at 1167; *Holtzman*, 62 Misc. 2d at 1024. It cannot possibly meet the more heightened standard

of scrutiny mandated by *Anderson-Burdick*. *See Jacobson*, 2019 WL 6044035, at *22 (applying heightened scrutiny because the statute at issue was politically discriminatory and holding that state's reasons for ballot order scheme could not justify the burden on Plaintiffs' rights under *Anderson-Burdick* framework).

54.     Injunctive and declaratory relief are needed to resolve this existing dispute, which presents an actual controversy between the Secretary of State and Plaintiffs, who have adverse legal interests, because the Ballot Order Statute subjects Plaintiffs to serious, concrete, and irreparable injuries due to disparate treatment in violation of the Equal Protection Clause, including, most immediately, in the upcoming 2020 general election.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

a) declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Ballot Order Statute violates the First and Fourteenth Amendments to the United States Constitution;

b) preliminarily and permanently enjoining the Secretary of State, his respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Ballot Order Statute under the authority granted to this Court by Federal Rule of Civil Procedure 65(a) and 28 U.S.C. § 2202;

c) awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d) granting such other and further relief as the Court deems just and proper, including requiring the Secretary of State to use a ballot order system that gives similarly situated major-party candidates an equal opportunity to be listed first on the ballot.

DATED: November 27, 2019         Respectfully submitted,

GREENE ESPEL PLLP

s/  *Sybil L. Dunlop*
Sybil L. Dunlop (Reg. No. 390186)
Katherine M. Swenson (Reg. No. 0389280)
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
Facsimile: (612) 373-0929
Email: sdunlop@greeneespel.com
Email: kswenson@greeneespel.com

*Attorneys for Plaintiffs*