## UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MADELINE PAVEK, ETHAN SYKES, DSCC, and DCCC, | |
| Plaintiffs, | Civil No. 19-cv-3000 (SRN/DTS) |
| v. | |
| STEVE SIMON, in his official capacity as the Minnesota Secretary of State, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION............................................................................................1

II.    BACKGROUND............................................................................................4

    A.  The Ballot Order Statute will require that DFL candidates be listed last among major party candidates on all ballots distributed in Minnesota's 2020 general election...........................................................................................4

    B.  The first-listed candidate on a ballot enjoys an electoral advantage simply due to ballot order. ............................................................................................6

    C.  There is a proven primacy effect that gives the first-listed candidate an advantage in Minnesota's elections. ................................................................9

    D.  In recent years, Minnesota has had a sizeable number of elections decided within the margins of advantage attributable to the primacy effect...............12

III.   ARGUMENT ................................................................................................13

    A.  Plaintiffs are highly likely to succeed on the merits. .....................................14

      1.  Legal Standard.........................................................................................14

      2.  The Ballot Order Statute unconstitutionally burdens Plaintiffs' fundamental rights.....................................................................................................15

      3.  The burdens the Ballot Order Statute imposes cannot be justified by any legitimate state interest. ..........................................................................22

    B.  Plaintiffs will suffer irreparable injury absent an injunction. ........................24

    C.  The balance of the equities and the public interest favor an injunction.........26

IV.   CONCLUSION ............................................................................................27

## TABLE OF AUTHORITIES

CASES                                                                    PAGE

*Akins v. Secretary of State*,
  904 A.2d 702 (N.H. 2006) ..................................................................20

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
  No. 03-CV-502, 2003 WL 21524820 (N.D.N.Y. July 7, 2003) ........................26

*Burdick v. Takushi*,
  504 U.S. 428 (1992)..................................................................14, 15

*Crawford v. Marion Cty. Election Bd.*,
  553 U.S. 181 (2008)..................................................................15, 22

*Cunningham v. Adams*,
  808 F.2d 815 (11th Cir. 1987) ..........................................................25

*Day v. Robinwood W. Cmty. Improvement Dist.*,
  No. 4:08CV01888 ERW, 2009 WL 1161655 (E.D. Mo. Apr. 28,
  2009) ...............................................................................26

*Fla. Democratic Party v. Detzner*,
  No. 4:16-cv-607, 2016 WL 6090943 (N.D. Fla. Oct. 16, 2016) ........................25

*Gould v. Grubb*,
  14 Cal. 3d 661 (1975) ....................................................7, 19, 20, 22

*Graves v. McElderry*,
  946 F. Supp. 1569 (W.D. Okla. 1996)........................................passim

*Hicks v. Miranda*,
  422 U.S. 332 (1975)....................................................................18

*Holtzman v. Power*,
  62 Misc. 2d 1020 (N.Y. Sup. Ct. 1970), *aff'd*, 311 N.Y.S.2d 824
  (1970) ..............................................................................7, 22

*Jacobson v. Lee*,
  No. 4:18-cv-262-MW/CAS, 2019 WL 6044035 (N.D. Fla. Nov.
  15, 2019) .........................................................................passim

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ..............................................25, 26, 27

## TABLE OF AUTHORITIES

CASES                                                                                          PAGE

*Mann v. Powell*,
   314 F. Supp. 677 (N.D. Ill. 1969), *aff'd*, 398 U.S. 955 (1970) ................... 17, 18

*Mann v. Powell*,
   333 F. Supp. 1261 (N.D. Ill. 1969) ........................................................ 18, 25, 26

*McLain v. Meier*,
   637 F.2d 1159 (8th Cir. 1980) .......................................................... 7, 16, 19, 20

*Netsch v. Lewis*,
   344 F. Supp. 1280 (N.D. Ill. 1972) ............................................................ 25, 26

*Norman v. Reed*,
   502 U.S. 279 (1992) ................................................................................... 15

*Obama for Am. v. Husted*,
   697 F.3d 423 (6th Cir. 2010) .................................................................... 25, 26

*Reynolds v. Sims*,
   377 U.S. 533 (1964) ................................................................................... 19

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
   411 U.S. 1 (1973) ..................................................................................... 19

*Sangmeister v. Woodard*,
   565 F.2d 460 (7th Cir. 1977) ..................................................................... 7, 22

STATUTES

Minn. Stat. § 204D.13 ................................................................................ 4, 5

Minn. Stat. § 206.61 .............................................................................. 2, 9, 24

## I.      INTRODUCTION

The United States Constitution prohibits any state from intentionally advantaging one political party in favor of another. But Minn. Stat. § 204D.13(2) (the "Ballot Order Statute") does exactly that, putting a thumb on the scale in favor of one major political party over another in all partisan contests. In fact, the Secretary has *admitted* that the Ballot Order Statute is designed to artificially influence election outcomes in order to disadvantage the most popular major political party. *See* Defs.' Memo. of Law in Supp. of Mot. to Dismiss ("Mot. to Dismiss"), ECF No. 15, at 12 (stating that the Ballot Order Statute is "a provision *dis*advantaging incumbents" and "an anti-incumbent provision," which serves to "mak[e] re-election marginally harder for incumbents to obtain"); *id.* at 4 (the Ballot Order Statute "is facially designed to make . . . single-party power over the levers of Minnesota's government more difficult to maintain").

And while the Secretary seeks to frame the Ballot Order Statute as a way for the State to give a helping hand—albeit an unfair and unconstitutional one—to the historically less popular Legal Marijuana Now and Grassroots-Legalize Cannabis parties, the Ballot Order Statute actually benefits the Republican Party in the majority of races, and it has for decades, regardless of whether other parties besides the Democratic-Farmer-Labor ("DFL") and Republican parties had "major party" status in a particular election year. This has been especially true in U.S. Congressional and state legislative races, where Republican candidates have been listed first in 62.5 and 79 percent of all races, respectively, in all years where data was readily available. Ex. 1, Expert Rpt. of Dr. Jonathan Rodden ("Rodden

Rpt.") at 15-17.[1]  But regardless of *which party* is benefited, it is undisputed that the statute is designed to, and does, confer a significant, material advantage to one particular party.

The arbitrary advantage conveyed by the Ballot Order Statute is the result of a well-documented phenomenon known as "position bias" or the "primacy effect," whereby the candidate listed first receives an electoral advantage solely due to ballot position. In order to diffuse the impact of this proven effect, many states rotate the order of candidates in elections. In fact, it is for this very reason that Minnesota itself utilizes a precinct-by-precinct rotation system to determine candidate name order in primaries and nonpartisan races.[2]  The stated purpose for this rotation across precincts is "so that each name appears on the machines or marking devices used in a municipality substantially an equal number of times in the first, last, and in each intermediate place in the list or group in which they belong." MINN. STAT. § 206.61(5).

But in general elections, when the candidates from different political parties face off against each other for the opportunity to represent the people of Minnesota, the Ballot Order Statute requires that candidates from major political parties whose party earned the least support in the last statewide election are *always* listed first in every partisan race up and down the ticket, except where that party runs no candidate, in which case the first-listed spot goes to the next-least-popular major party candidate down the line. The result is

---

[1]  All Exhibits cited are to the Declaration of Alexi M. Velez in Support of Plaintiffs' Motion for Preliminary Injunction ("Velez Decl.").

[2]  See MINN. STAT. § 206.61; MINN. R. 8220.0825, Subp. 3; see also OFFICE OF THE MINN. SEC'Y OF STATE STEVE SIMON, Order of Names and Offices on the Ballot, https://www.sos.state.mn.us/elections-voting/how-elections-work/order-of-names-and-offices-on-the-ballot/ (last visited Feb. 10, 2020).

a state-mandated, systemic, and entirely arbitrary disadvantage that has harmed DFL candidates in election after election. The real losers are not only the DFL Party and their candidates who must run against both their opponent *and* a significant disadvantage built into the ballot itself, but also Minnesota voters whose voting power is directly diluted by the Ballot Order Statute's operation.

There is an extensive line of precedent invalidating similar laws, including, most recently, a decision issued in November 2019 by a federal district court in Florida, permanently enjoining Florida's ballot order law, which, like Minnesota's, favored a particular party in all partisan general elections. *See generally Jacobson v. Lee*, 411 F. Supp. 3d 1249 (N.D. Fla. 2019). But the *Jacobson* decision is hardly novel. More than forty years ago, the Eighth Circuit recognized in *McLain v. Meier* that the primacy effect exists and confers a "ballot advantage in the first position," holding that a statute that awarded the first-listed spot to one party over others unconstitutionally "burden[ed] the fundamental right to vote possessed by supporters of the last-listed candidates." 637 F.2d 1159, 1166-67 (8th Cir. 1980). Ten years before *McLain*, the U.S. Supreme Court summarily affirmed an injunction requiring Illinois to give candidates an equal opportunity to be listed first after a challenge to a state practice that gave certain types of candidates the advantage of being listed first. *See Mann v. Powell*, 314 F. Supp. 677 (N.D. Ill. 1969) ("*Mann I*"), *aff'd*, 398 U.S. 955 (1970). There is no reason that the Court should come to any different conclusion here.

Plaintiffs accordingly seek to level the playing field in advance of the 2020 general election. Plaintiffs' claims are not dependent upon *which* major party will be advantaged

in each race on the 2020 ballot at the expense of DFL candidates, but the fact that DFL candidates—and the party committees and voters who support them—will be intentionally and systemically disadvantaged in *every* race. For this reason, Plaintiffs move for a preliminary and permanent injunction, and also respectfully request a hearing consolidated with trial on the merits pursuant to Rule 65(a)(2), to allow for a decision well in advance of the November General Election to avoid the irreparable harm of the Ballot Order Statute unconstitutionally distorting yet another of Minnesota's otherwise fair and free elections, while also providing sufficient time for Minnesota to implement a constitutionally-sound method of ordering candidates on the ballot. Because all the relevant factors strongly favor Plaintiffs' motion, the Court should issue an order enjoining the Ballot Order Statute in advance of the 2020 general election and require the State to use a ballot ordering system that gives similarly-situated candidates an equal opportunity to be listed first on the ballot.

## II.    BACKGROUND

**A.    The Ballot Order Statute will require that DFL candidates be listed last among major party candidates on all ballots distributed in Minnesota's 2020 general election.**

The Ballot Order Statute mandates that, for every single partisan election listed on a general election ballot in the state, the major party candidates must be listed in reverse order of the average vote that their political party received in the last state general election. *See* MINN. STAT. § 204D.13(2).[3] Because DFL candidates received the highest average

---

[3] The provision that Plaintiffs challenge mandates that major party candidates are ordered based on their party's average performance in the last state general election. Plaintiffs do not challenge the Ballot Order Statute's tiered approach to ballot order, placing candidates

number of votes in the 2018 general election, all DFL candidates will be listed last—among major party candidates—on every general election ballot in Minnesota in the 2020 general election. In races with only two major parties involved, which historically has been most elections and likely will be again, Republican candidates will be first. In any event, DFL candidates have no opportunity to be listed first unless no other major party candidate is vying for the seat in question.

Plaintiffs, two individual Minnesota voters and two national political committees, support and intend to continue to support DFL candidates in Minnesota. Absent an order from this Court, Plaintiffs are guaranteed to suffer injury as a result of the Ballot Order Statute in the coming 2020 general election.

For example, the Ballot Order Statute will dilute Plaintiffs Madeline Pavek's and Ethan Sykes's votes as compared to those of voters supporting candidates listed first in each race, burden their ability to engage in effective efforts to elect DFL candidates, and systematically disadvantage the candidates they support. Decl. of Madeline Pavek ("Pavek Decl."), ¶¶ 5-7; Declaration of Ethan Sykes ("Sykes Decl."), ¶¶ 3-8. Furthermore, the Ballot Order Statute will harm DSCC, a political committee whose central mission is to support Democratic candidates for U.S. Senate, including for Minnesota's two U.S. Senate seats, one of which will be up for election in 2020, and DCCC, a political committee whose central mission is to support Democratic candidates for the U.S. House of Representatives, including for Minnesota's eight congressional districts, all of which will also be on the

---

that were nominated by petition (i.e. minor party or unaffiliated candidates) lower on the ballot than all major party candidates. *See* MINN. STAT. § 204D.13(3).

ballot in 2020. Decl. of Lucinda Guinn ("Guinn Decl."), ¶¶ 2, 4, 13; Decl. of Sara Schaumburg ("Schaumburg Decl."), ¶ 2. The Ballot Order statute frustrates DSCC's and DCCC's mission by putting the candidates they support at a systemic disadvantage and requires them to expend and divert resources to combat such disadvantage. Guinn Decl., ¶¶ 6-18, 19-21; Schaumburg Decl., ¶¶ 5-12.

**B.      The first-listed candidate on a ballot enjoys an electoral advantage simply due to ballot order.**

"It has long been widely believed in political circles that the first-listed candidate is more likely to win"; indeed, in a close election, political veterans have long believed that ballot position could very well be the factor that decides the race. Schaumburg Decl., ¶ 5.

The relevant social science entirely confirms this long-held belief. Researchers have long understood that individuals manifest bias toward selecting the first in a set of visually-presented options. Ex. 1, Expert Rpt. of Dr. Jonathan Rodden ("Rodden Rpt.") at 8. This phenomenon is referred to in the literature by many names, including the "primacy effect" and "position bias." *Id.* at 9; *see also Jacobson*, 411 F. Supp. 3d at 1267 (using both terms interchangeably to refer to the phenomenon). The recent and extensive studies on this question are in agreement: the order in which candidates are listed on the ballot has an impact on their electoral success in virtually every jurisdiction in which the question has been studied. *See Jacobson*, 411 F. Supp. 3d at 1271 (summarizing how 84% of 1,086 unique tests across 70 years of social science revealed primacy effects in elections); Rodden Rpt. at 9 (noting that more recent studies in Ohio, North Dakota, New Hampshire, Texas, and California have confirmed bias in favor of first-listed candidates); *id.* at 23-28

(describing how North Carolina Republicans changed a law similar to the Ballot Order Statute after losing the governorship, and that the effect of that change demonstrates effects of position bias); *see also* Ex. 2, Expert Rpt. of Dr. Jon A. Krosnick ("Krosnick Rpt.") at 9-19 (detailing studies of position bias in elections in United States).[4] The effect has been observed in other countries, too. *See* Krosnick Rpt. at 19-22.

Even before the advantage of the robust body of empirical research that now overwhelmingly supports this proposition, there was a long history of cases finding that the primacy effect has a real and meaningful impact on elections. *See, e.g.*, *McLain*, 637 F.2d at 1166 (affirming "finding of ballot advantage in the first position"); *Sangmeister v. Woodard*, 565 F.2d 460, 465 (7th Cir. 1977) (finding district court's conclusion "top placement on the ballot would be an advantage . . . is supported by substantial evidence"); *Graves v. McElderry*, 946 F. Supp. 1569, 1576 (W.D. Okla. 1996) (finding position bias in Oklahoma's elections); *Gould v. Grubb*, 14 Cal. 3d 661, 664 (1975) ("[T]he superior court's finding that placement in a top ballot position affords a candidate a substantial advantage over lower-placed candidates is supported by abundant expert testimony introduced at trial and is consistent with parallel findings rendered in similar litigation throughout the country."); *Holtzman v. Power*, 62 Misc. 2d 1020, 1023 (N.Y. Sup. Ct.

---

[4] Among the recent studies to demonstrate the reasons for the advantages that accrue from being listed first on the ballot is research demonstrating that the candidate listed first is least harmed by proximity errors, which occur when voters fail to accurately translate their voting intentions and mistakenly select the choice before or after their intentioned choice. *Jacobson*, 411 F. Supp. 3d at 1273-74 (discussing evidence that "voters intending to vote for the first-listed candidate make fewer 'proximity errors' than do voters intending to vote for candidates listed in lower positions within an office block").

1970), *aff'd*, 311 N.Y.S.2d 824 (1970) ("It was found herein as a matter of fact that there is a distinct advantage to the candidate whose name appears first on a ballot. Aside from the factual determination, such a belief appears to be so widespread and so universally accepted as to make it almost a matter of public knowledge."). And in the only case in which the U.S. Supreme Court has considered a challenge to a state practice that similarly gave certain types of candidates the advantage of being placed first on the ballot, the Court summarily affirmed the lower court's preliminary injunction requiring the State to use a ballot order system that gave candidates an equal opportunity to be listed first on the ballot. *See Mann I*, 314 F. Supp. 677.

The most recent in this parade of precedent came in the form of a permanent injunction issued by a federal district court late last year, in which the court invalidated a ballot order law that, just like Minnesota's, required that in all partisan general elections, one political party be afforded the discrete, undeniable, and significant windfall attributable to being listed first on the ballot. *Jacobson*, 411 F. Supp. 3d at 1254-56. The difference, the court noted, between it and the raft of cases listed above was that *Jacobson* represented "the first time" that a court had "a fully developed evidentiary record upon which to evaluate a ballot order claim." *Id*. at 1267. The defendants there raised a "hodgepodge" of arguments in opposition, but most, the court noted, were designed to convince the court to avoid reaching the merits. *Id*. at 1256. When those arguments were disposed of, the court observed, "the issues presented in this case are not novel"; in fact, "[i]n a jurisprudential sense, they are not even particularly challenging." *Id*. at 1258. In the end, the court easily found that the Constitution could not sustain the ballot order statute at issue, through which

the state "put its thumb on the scale and award[ed] an electoral advantage" to a particular major party. *Id*. at 1255; *see also id*. at 1276.

Other provisions in Minnesota law have long acknowledged the advantage conferred on the first-listed candidate because of ballot order, requiring that, in non-partisan and primary elections, ballot order must be rotated on a precinct-by-precinct basis. *See* MINN. STAT. § 206.61(5); MINN. R. 8220.0825; *supra at* OFFICE OF THE MINN. SEC'Y OF STATE STEVE SIMON, *Order of Names and Offices on the Ballot*. That system was put into place expressly "so that each name appears on the machines or marking devices used in a municipality substantially an equal number of times in the first, last, and in each intermediate place in the list or group in which they belong." MINN. STAT. § 206.61(5); *see* 1984 Minn., c. 447, § 7, eff. Jan. 1, 1985. Yet, for some reason, when opposing parties face off against each other in partisan races, the Ballot Order Statute prohibits that same equality of opportunity.

## C.   There is a proven primacy effect that gives the first-listed candidate an advantage in Minnesota's elections.

Dr. Jonathan Rodden, a professor of political science at Stanford University who was qualified as an expert on the issues of position bias in *Jacobson v. Lee*, where the court found his "methods and analysis reasonable, reliable, and credible," confirms that ballot order matters in Minnesota general elections. Rodden Rpt. at 22; *see also Jacobson*, 411 F. Supp. 3d at 1272. Specifically, Dr. Rodden finds that, on average, Republicans have enjoyed a 2.6 percentage point advantage in vote share when they are listed first on Minnesota general election ballots under the Ballot Order Statute. Rodden Rpt. at 4, 19.

The advantage is even higher when Republicans are running for an open seat, where it averages 2.9 percentage points. *Id.* at 4, 20. Dr. Rodden finds that other major parties—as the Legal Marijuana Now and Grassroots-Legalize Cannabis parties will be in the 2020 general election—also enjoy electoral advantages when they are listed first on the ballot. *Id.* at 22-23. For example, the overall advantage associated with being listed first on the ballot for Reform/Independence Party candidates is 4.2 percentage points, which increases to 5.5 percentage points in open seats. *Id.* at 22. Green Party candidates have benefitted from a smaller electoral advantage in the relatively few races in which they have appeared at the top of the ballot: 1.3 percentage points. *Id.* at 23. Nevertheless, Dr. Rodden concludes that, "in Minnesota general elections, other things equal, a party's candidates can expect to receive an electoral bonus when they are listed first." *Id.* at 23.

In addition, Dr. Rodden found that that since 2000, for example, Republican candidates have been listed first in a whopping 79 percent of all state legislative races in Minnesota, despite that: the Independence Party enjoyed major party status under Minnesota law from 1994 through 2004, the Green Party had major party status from 2002 to 2004, and the Constitution Party had major party status in 2000. Rodden Rpt. at 1, 11. Indeed, except for the Independence Party that was listed first in state legislative races a mere 8.5 percent of the time overall in state legislative races analyzed, none of the other smaller major parties that have achieved major status have been listed first even two percent of the time. *Id.* at 17. This is because, as Dr. Rodden concludes, "[c]andidates from smaller [major] parties rarely run" for state legislative office. *Id.*

Similarly, Dr. Rodden found that Republican Party candidates have been listed first in 62.5 percent of all U.S. Congressional races since 1982, because "[s]maller [major] parties are listed first in Congressional races less frequently simply because their candidates file for races less frequently" than candidates of the DFL or Republican parties. *Id.*; *see also id.* at Table 2. As a result, there is no denying that, in practice, the Ballot Order Statute has most often conferred its full benefit on the Republican Party, its candidates, and its voters since the statute's inception.[5] And, contrary to the Secretary's unsupported speculation that the Legal Marijuana Now and Grassroots-Legalize Cannabis parties will prove to be some never-before-seen exception in 2020, there is no basis for this assertion in history. *See* Sec'y's Reply in Support of Mot. to Dismiss, ECF No. 20, at 4-8.

---

[5] Regardless of whether it will be procedurally easier for the Legal Marijuana Now and Grassroots-Legalize Cannabis parties to qualify candidates in 2020 than it was in prior years, the Legal Marijuana Now Party ran only four candidates in 2018, despite there being 149 partisan state and federal races on the ballot, and the Grassroots-Legalize Cannabis Party ran a total of only three candidates. *See* Pls. Resp. in Opp. to Mot. to Dismiss, ECF No. 18, at 11. In other words, these parties ran candidates in only 2% of partisan state and federal races. *Id.* In 2016, the Grassroots-Legalize Cannabis party ran zero candidates in the total of 210 partisan state and federal races, and the Legal Marijuana Now Party ran only five, which again accounted for only 2% of races. And these parties are not outliers in this regard—instead, these numbers are consistent with what other major parties have run, even when they qualified for the first-listed spot on the ballot. For example, in 2014 when the Independence Party had major party status and was, as the Legal Marijuana Now and Grassroots-Legalize Cannabis parties are now, guaranteed the first-listed position on the ballot, it ran only 12 out of a possible 147 candidates in partisan state and federal races. And in all but one other 2014 partisan state or federal race, where the DFL candidate ran entirely unopposed and which was also the only instance in which the DFL candidate was listed first, it was the Republican Party candidate that was listed first and therefore received the full benefit of the primacy effect, for a total of 134 out of 147 races, or *just over 91 percent* of the time.

Even if, however, the Secretary was correct in his unsupported claim that the Legal Marijuana Now and Grassroots-Legalize Cannabis parties are likely to run candidates in virtually every race on the ballot (which he is not) the Ballot Order Statute would still be unconstitutional. The state has <u>no</u> legitimate interest in intentionally benefiting a chosen political party—or always disadvantaging a party—with the *intent* of distorting, even marginally, the outcomes of our fair and free elections. *See supra* at 7-9 (collecting cases); *see also infra* at 22-24 (same). Not surprisingly, the Secretary offers not a single decision from any court anywhere in support of his astounding position that the Ballot Order Statute, which he admits was *designed* to benefit one similarly-situated major party over all others, does not offend first principles of our very democracy. *See generally* Mot. to Dismiss; Sec'y's Reply in Support of Mot. to Dismiss.

**D.    In recent years, Minnesota has had a sizeable number of elections decided within the margins of advantage attributable to the primacy effect.**

Minnesota has a history of close elections.[6] In 2018, two open congressional seats in which Republican Party candidates won were decided by margins within five percentage points. Most notably, in Minnesota's 1st congressional district, the Republican candidate won 50.1 percent of the vote to the DFL candidate's 49.7 percent—a margin of 0.4 percentage points, which is well below the 2.9 percentage-point advantage that Dr. Rodden found for Republican candidates in open seats. Several State House seats were also won

---

[6] All election results cited herein are publicly available at the Election Results page of the Minnesota Secretary of State's website, https://www.sos.state.mn.us/elections-voting/election-results/.

by low margins, including District 47B (0.5 points), District 37B (0.7 points), and District 54B (2.1 points).

There is no reason to expect that 2020 will be any different. To the contrary, Minnesota voters will cast ballots in not only the presidential election, but a race for U.S. Senate, a full 8 seats in the U.S. House of Representatives, every seat in the Minnesota House of Representatives, and every seat in the Minnesota Senate, not to mention countless other races up and down the ticket. *See* Guinn Decl., ¶ 24; Schaumburg Decl., ¶ 3. Many of these races are already predicted to be competitive, and political party committees have started marshaling resources to support their party's candidates. Guinn Decl., ¶¶ 16-18; Schaumburg Decl., ¶¶ 3, 11. Yet, under the Ballot Order Statute, Republican candidates will enter many of those races with a significant head start over their DFL opponents, for no other reason than Republican candidates performed worse on average than DFL candidates in the 2018 general election.

## III.   ARGUMENT

Plaintiffs are entitled to preliminary and permanent injunctive relief because they have met their burden under the relevant standards, which are: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (quotations omitted); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Jacobson*, 411 F. Supp. 3d at 1283 (listing same criteria for permanent injunction and finding all satisfied); *Amoco Prod. Co. v. Vill. of*

*Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.").

## A.  Plaintiffs are highly likely to succeed on the merits.

Plaintiffs are not just substantially but highly likely to prevail on their claims that the Ballot Order Statute is unconstitutional. As in *Jacobson*, on its face, Minnesota's Ballot Order Statute treats similarly situated major political parties, their candidates, and the voters who support them differently, while also burdening the fundamental constitutional rights of these voters. The resulting harm to Plaintiffs is irreparable and cannot be justified by any legitimate state interest.

### 1.  Legal Standard

When an election law's classification of candidates or burden on voting rights is challenged on constitutional grounds, courts apply the "*Anderson-Burdick*" standard. *See Jacobson*, 411 F. Supp. 3d at 1266-68 (applying *Anderson-Burdick* to challenge to Florida ballot order statute functionally identical to Minnesota's Ballot Order Statute); *Graves*, 946 F. Supp. at 1578-79 (applying *Anderson-Burdick* to ballot order statute that favored Democrats and finding it unconstitutional); *see also Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182-83 (5th Cir. 1996). That standard requires the Court to "weigh the character and magnitude of the asserted injury to [voting rights] against the precise interests put forward by the State as justifications for the burden imposed by its rule," *Tex. Indep. Party*, 84 F.3d at 182, "taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). It is a "flexible" sliding scale, where "the rigorousness of [the court's] inquiry depends upon the extent to which [the challenged law] burdens [voting rights]." *Id.* When a challenged law subjects voting rights to a "severe" restriction, it "must be narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing: "[h]owever slight" the burden on voting rights "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman*, 502 U.S. at 288-89).

### 2. The Ballot Order Statute unconstitutionally burdens Plaintiffs' fundamental rights.

On its face, the Ballot Order Statute treats the candidates of the favored party—i.e., that party whose candidate received the least votes, on average, in the last statewide election—differently from the candidates of all other major political parties. That differential treatment works to the systemic and significant disadvantage of all other similarly-situated major party candidates. Courts that have considered challenges to similar schemes have easily and consistently found them unconstitutional.

Every court to address the question has held that the Constitution prohibits a state from giving an artificial electoral advantage to any particular party as a result of the primacy effect. It is of no moment whether the statute affords the primacy effect's windfall to the least popular party, or to the most popular party, or to the party that represents the incumbent for a particular office, or to the party with the tallest or shortest average height

of its candidates. In *McLain v. Meier*, which is on all fours with this case and also binding on this Court, the Eighth Circuit invalidated a statute that reserved the first position on the ballot for the party that received the most votes in the last congressional election. 637 F.2d at 1166. In *Graves v. McElderry*, a federal district court applied *Anderson-Burdick* to strike down an Oklahoma law that mandated that Democrats be listed first in each race on every general election ballot. 946 F. Supp. at 1582; *see also id*. at 1580 (finding "no legitimate State interest . . . can possibly be served by the selection of *one particular party's candidates* for priority position on every General Election ballot") (emphasis added). The list of cases goes on. *See, e.g.*, *Sangmeister*, 565 F.2d at 468 ("This court will not accept a procedure that invariably awards the first position on the ballot to . . . the incumbent's party.") (citation omitted); *Netsch v. Lewis*, 344 F. Supp. 1280 (N.D. Ill. 1972) (holding statute prescribing ballot order by past electoral success violated equal protection); *Gould*, 14 Cal. 3d at 664 (explaining how "any procedure which allocates such advantageous positions to a particular class of candidates inevitably discriminates against voters supporting all other candidates"); *Holtzman*, 62 Misc. 2d at 1024-25 (holding system requiring incumbent at top of ballot unconstitutional).

Most recently, in *Jacobson*, the Court invalidated a statute that favored one particular major political party by giving it first placement in all partisan races on the ballot based on the vote totals of a prior unrelated election, just like Minnesota's. *Jacobson*, 411 F. Supp. 3d at 1286-87; *see also* Rodden Rpt. at 1 (comparing Minnesota's Ballot Order Statute with those of "[o]ther U.S. states, like Florida, Georgia, and Texas, [which] have also adopted statutes dictating that the order of names on the ballot is determined by the

outcomes of a preceding general election" and noting that the only difference being that, where other states give first position to the most popular major party, Minnesota gives the first-listed position to the least popular major party). As the *Jacobson* Court noted, it was the favoritism of one major political party over all others that offended the Constitution, not *how* the state determined which similarly-situated party it would favor. *See Jacobson*, 411 F. Supp. 3d at 1261, 1276 (the Florida statute unconstitutionally "allocates the primacy effect vote to groups of candidates on the sole basis of their partisan affiliation" and the statute is not nonpartisan or politically neutral simply because it allows for ballot order to change each election cycle, but simply that "the direction of the statute's partisanship changes depending on circumstances"). In other words, the fact that Minnesota's Ballot Order Statute favors the party with the least votes is wholly immaterial. States have no business or legitimate state interest in distorting election results. Full stop.

And these cases are consistent with *Mann v. Powell*, the only opportunity that the U.S. Supreme Court has had to consider the constitutionality of a ballot ordering system that gave one category of candidates a systemic advantage. In those proceedings, the district court issued a preliminary injunction suspending an Illinois practice that ordered candidates on the ballot based on the order in which their nominating petition was received and, when two nominating petitions were received simultaneously, favored incumbents. *Mann I*, 314 F. Supp. at 679. The district court found the systemic favoring of incumbents—even when only to break a tie—unconstitutional, and issued a preliminary injunction requiring that the ballot order in the upcoming election be determined by "nondiscriminatory means by which each" similarly-situated candidate (i.e., those whose

petitions were received at the same time) must "have an equal opportunity to be placed first on the ballot." *Id.*[7] The Supreme Court summarily affirmed that ruling, which remains binding precedent upon this court. *See Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (holding "that the lower courts are bound by summary decisions by this Court until such time as this Court informs them that they are not") (quotation marks omitted); *see also Jacobson*, 411 F. Supp. 3d at 1256-57 ("The summary affirmance of *Mann* would alone compel the conclusion that Plaintiffs' claims are justiciable."); *see also id.* at 1267 ("[T]he Supreme Court's summary affirmance in *Mann* indicates ballot order claims implicate the Equal Protection Clause.").

*Mann*'s reasoning applies equally here: like the Illinois law, Minnesota's ballot order statute arbitrarily grants top ballot placement, and thus electoral advantage, to one class of candidates, burdening the candidates of all other similarly-situated political parties. Again, Minnesota's Ballot Order Statute is no more constitutional because it places the full advantage of the primacy effect on one particular party because it was the least popular in the last statewide election than it would be for favoring one particular political party over those similarly situated for any other reason. And the scores of cases that Plaintiffs have cited throughout this litigation, including in their Complaint, demand the same result here: the Ballot Order Statute is unconstitutional.

---

[7] The lower court would later issue a permanent injunction. *Mann v. Powell*, 333 F. Supp. 1261, 1267 (N.D. Ill. 1969) ("*Mann II*"); *see also id.* (rejecting argument that "favoring certain candidates on the basis of 'incumbency' or 'seniority' is constitutionally permissible").

The weight of precedent recognizes not only the advantage the primacy effect bestows on first-listed candidates, but also the heavy burden on the rights of voters whose preferred candidates appear later. For instance, in *Gould v. Grubb*, the court relied on U.S. Supreme Court precedent to find that a statute that placed the incumbent first on the ballot operated to "substantially" and unconstitutionally "dilute[] the weight of votes of those supporting nonincumbent candidates." 14 Cal. 3d at 672. In *Graves*, the court similarly found that "the existence of position bias arising from ballot configuration" infringes upon voters' constitutional rights "by negating the weight or impact" of their votes. 946 F. Supp. at 1579. And, in *McLain*, the Eighth Circuit found that a system that placed candidates of the party that received the most votes in the last North Dakota congressional election first unconstitutionally "burden[ed] the fundamental right to vote possessed by supporters of the last-listed candidates." 637 F.2d at 1167. Because the Ballot Order Statute imposes the same harm to Plaintiffs here, *McLain* controls and demands the same result.

These authorities are consistent with long-standing Supreme Court authority recognizing that voters have the right, "implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 n.78 (1973). "[A]n individual's right to vote for state legislators is unconstitutionally impaired when its weight is in a substantial fashion diluted when compared with votes of [other] citizens." *Reynolds v. Sims*, 377 U.S. 533, 568 (1964).

The practical effect of the Ballot Order Statute directly infringes upon that right. Because more Democratic voters must turn out and support their candidates to counteract the state-mandated advantage that the Ballot Order Statute confers on the Legal Marijuana

Now and Grassroots-Legalize Cannabis parties in those few races in which either run candidates, or, far more typically, when the Ballot Order Statute confers its advantage on the Republican Party, the power of voters supporting non-DFL candidates is enhanced, such that one Legal Marijuana Now, Grassroots-Legalize Cannabis, or Republican voter effectively has more voting power than one DFL voter. *See* Pavek Decl., ¶¶ 6-7; Sykes Decl., ¶ 7; Guinn Decl., ¶¶ 14-16, 20; Schaumburg Decl., ¶¶ 7-9.

Given the Ballot Order Statute's persistent and blanket favoritism of candidates who received the least number of votes, on average, in the last statewide election over similarly-situated candidates from all other major parties, the Court could and should find it unconstitutional even if Minnesota had never had a close election that had come within the margin of advantage conferred on first-listed candidates under the Ballot Order Statute. *See McLain*, 637 F.2d at 1159 (holding ballot order system unconstitutional where plaintiff candidate received only 1.5% of the vote); *Graves*, 946 F. Supp. at 1576-81 (finding ballot order system unconstitutional, based on "some measure of position bias exist[ing] in Oklahoma's General Election"); *Akins v. Secretary of State*, 904 A.2d 702, 707 (N.H. 2006) (striking down statute on finding "that the primacy effect influences, even to a small degree, the outcome of New Hampshire elections"); *Gould*, 14 Cal. 3d at 668 (finding "significant," but unquantified, advantage accrued to candidates even in high-visibility elections); *see also Jacobson*, 411 F. Supp. 3d at 1272.

But it is even more troubling because, as Minnesota sees more and increasingly close elections, the dangers posed by the Ballot Order Statute become all the more severe. *See Jacobson*, 411 F. Supp. 3d at 1281 (noting that, given the closeness of Florida elections,

"the practical burden" of Florida's ballot order statute is "severe indeed"). Minnesota has had a significant number of elections decided well within the margin of advantage that is conferred by the Ballot Order Statute—in fact, this was true several times over just looking at election data from 2018 alone. *See supra* at II.D. Looking forward, multiple competitive elections are projected for Minnesota in 2020, including but not limited to the races to represent Minnesotans in the U.S. House of Representatives for Minnesota's First and Second Congressional Districts. *See* Guinn Decl., ¶¶ 17-18. Those chances will be artificially depressed, however, if the 2020 election is conducted on the unlevel playing field that the Ballot Order Statute mandates.

Demographic and partisan data show that the number of close elections in 2018 are likely to become the rule rather than the exception in Minnesota. *See* Guinn Decl., ¶¶ 17-18; *see also* Pavek Decl., ¶ 6; Sykes Decl., ¶ 4; *see also* Ex. 3, Jeffrey M. Jones, *Red States Outnumber Blue for First Time in Gallup Tracking*, GALLUP (Feb. 3, 2016) ("Ohio, North Carolina, Minnesota, Wisconsin and Florida are the most evenly balanced states politically, with less than one point separating Democratic and Republican Party preferences in those states"); Rodden Rpt. at 12-13 ("Minnesota statewide elections are often quite competitive between the DFL and Republicans"); *see also id.* at Figure 1 (tracking average votes per candidate by party in Minnesota statewide races since 1982).

For all these reasons, Plaintiffs are highly likely to be able to prove that the Ballot Order Statute significantly injures their fundamental rights. Accordingly, under *Anderson-Burdick*, the statute is subject to heightened scrutiny and may only be maintained if the Secretary can demonstrate that legitimate and relevant interests justify the imposition of

the burden. *Jacobson*, 411 F. Supp. 3d at 1282 (subjecting Florida's ballot ordering law to heightened scrutiny under *Anderson-Burdick*). He cannot begin to do so.

> **3.** **The burdens the Ballot Order Statute imposes cannot be justified by any legitimate state interest.**

The burdens imposed on Plaintiffs' fundamental rights are substantial, requiring that the Court apply heightened scrutiny to their claims. *See id.*; *see also Gould*, 14 Cal. 3d at 675. But even if the Ballot Order Statute were subject to a less stringent level of scrutiny, it would still not survive challenge. *See Jacobson*, 411 F. Supp. 3d at 1282 ("Florida's current ballot order scheme cannot satisfy even the extremely deferential rational-basis standard under the *Anderson/Burdick* framework."); *Graves*, 946 F. Supp. at 1580 (finding no legitimate state interest in always placing one major political party first on the ballot); *Holtzman*, 62 Misc. 2d at 1024 (no rational basis for "such favoritism to a candidate merely on the basis of his having been successful at a prior election"); *Sangmeister*, 565 F.2d at 467 (ballot order system did not further "any substantial state interest").

*Anderson-Burdick* requires that in balancing the burdens against the state's interest in imposing those burdens, the Court must analyze the *specific* justifications given by the State in the particular case before it. *See Crawford*, 553 U.S. at 190 ("Rather than applying any 'litmus test' that would neatly separate valid from invalid restrictions . . . a court must identify and evaluate the interests put forward by the State as justifications for the burden imposed by its rule, and then make the 'hard judgment' that our adversary system demands."); *Jacobson*, 411 F. Supp. 3d at 1277 (noting that state's identified interests for

its ballot ordering law were "not quite on point with the *Anderson/Burdick* standard" because they were not interests in the specific law at issue).

Here, the arguments put forth by the Secretary to justify the State's interest in the Ballot Order Statute vividly demonstrate precisely why the Ballot Order Statute is unconstitutional. *See* Mot. to Dismiss at 4, 12. The Secretary states that the Ballot Order Statute was designed for the singular purpose of distorting election outcomes by "disadvantaging incumbents" and "making re-election marginally harder for incumbents to obtain." Mot. to Dismiss at 12. These admissions are extraordinary. The State has no legitimate interest in tipping the scale in what should be our free and fair elections, and our Constitution plainly prohibits any such interference. As the court stated in *Graves v. McElderry*, "no legitimate State interest . . . can possibly be served by the selection of one particular party's candidates for priority position on every General Election ballot." 946 F. Supp. at 1580; *see also id.* at 1581 ("Political patronage is not a legitimate state interest which may be served by a state's decision to classify or discriminate in the manner in which election ballots are configured as to the position of candidates on the ballot."); *see also Gould*, 14 Cal. 3d at 664 (regardless that ballot order statute favored incumbents, in particular, finding the statute unconstitutional *because* it "establishe[d] two classifications of candidates for public office" and therefore imposed "a very 'real and appreciable impact' on the equality, fairness and integrity of the electoral process.'").

The Secretary claims the State is empowered to interfere with fair and free elections for the benefit of a specific major political party and its candidates, as long as the particular party is not the most popular overall. But the Secretary cites not a single case to support

that remarkable proposition. And for good reason: counsel is not aware of a single case from any jurisdiction ever recognizing such a state interest at all, let alone holding that such an interest is legitimate. Simply put, there is no state interest in intentionally giving any political party or its candidates a boost at the expense of the rights of other parties and the Minnesotan voters who support them. The very notion is offensive to first principles of our democratic system.

Indeed, if a fixed ballot order is inappropriate for non-partisan and primary races, because it would make those elections unfair, *see* MINN. STAT. § 206.61; MINN. R. 8220.0825, it cannot be that those same concerns do not persist into the general election. If anything, those concerns are even more momentous when the candidates of different political parties face off against each other. *See Jacobson*, 411 F. Supp. 3d at 1280 (noting that "voter confidence in the integrity of Florida's elections process would actually be undermined by Florida's present ballot order scheme").

In sum, because the Ballot Order Statute imposes significant burdens without legitimate state interests, Plaintiffs are substantially likely to succeed on their claims.

**B.      Plaintiffs will suffer irreparable injury absent an injunction.**

The heavy thumb that the Ballot Order Statute puts on the scale in every single partisan general election in favor of the major party that earned the least number of votes on average in the last statewide election causes substantial and irreparable injury to Plaintiffs and must be remedied as soon as possible, in time for the practice to be changed before the November election. The DSCC and DCCC intend to commit significant resources to support the election of Democrats up and down the ticket in Minnesota in the

2020 election. *See* Schaumburg Decl., ¶¶ 4, 11; Guinn Decl., ¶ 20. Unless the Ballot Order Statute is enjoined, it will severely hamper those efforts. *See* Guinn Decl., ¶¶ 21-22; *see also* Schaumburg Decl., ¶ 12. Once the election has come and gone, those serious injuries to Plaintiffs cannot be "undone through monetary remedies"—the injury becomes irreparable. *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987); *see also League of Women Voters of N.C. v. North Carolina* ("*The League*"), 769 F.3d 224, 247 (4th Cir. 2014); *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2010) ("*OFA*"); *Fla. Democratic Party v. Detzner*, No. 4:16-cv-607, 2016 WL 6090943, at *8 (N.D. Fla. Oct. 16, 2016); *Netsch*, 344 F. Supp. at 1280-81; *Mann II*, 333 F. Supp. at 1267.

In addition, Minnesota voters who support DFL candidates, including Plaintiffs Madeline Pavek and Ethan Sykes, will also suffer irreparable harm through the systemic dilution of their voting power absent an injunction. *See* Pavek Decl., ¶ 7 Sykes Decl., ¶ 7. Simply put, the Ballot Order Statute makes their votes carry less weight and effectively gives voters who support the Legal Marijuana Now Party, or, if it runs no candidate, the Grassroots-Legalize Cannabis Party, or, if it runs no candidate, the Republican Party, more voting power—another injury which no relief after the election can remedy. Pavek Decl., ¶¶ 6-7; Sykes Decl., ¶ 7; Guinn Decl., ¶¶ 12-16; Schaumburg Decl. ¶¶ 7-9.

This is in sharp contrast to the Ballot Order Statute's impact on the voting power of voters who support the Legal Marijuana Now Party—or, if it runs no candidate, the Grassroots-Legalize Cannabis Party, or, if it runs no candidate, the Republican Party— which it enhances, such that one of those voters has effectively more voting power than one DFL voter.

Because these harms, which strike at the very heart of the functioning of a fair and democratic society, cannot be remedied post-election, they are also irreparable. *See Netsch*, 344 F. Supp. at 1280-81 (recognizing "[t]he constitutional rights of the plaintiffs, and all persons similarly situated, will be irreparably damaged unless the temporary order sought herein is granted" prohibiting "granting priority to candidates by reason of incumbency and seniority"); *Mann II*, 333 F. Supp. at 1267 (permanently enjoining ballot order system after recognizing "the difficulty of fashioning relief after ballots have been certified"); *Day v. Robinwood W. Cmty. Improvement Dist.*, No. 4:08CV01888 ERW, 2009 WL 1161655, at *3 (E.D. Mo. Apr. 28, 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, No. 03-CV-502 (NAM/DRH), 2003 WL 21524820, at *3 (N.D.N.Y. July 7, 2003); *see also The League*, 769 F.3d at 247 (finding harm irreparable because "once the election occurs, there can be no do-over and no redress"); *OFA*, 697 F.3d at 436.

## C.     The balance of the equities and the public interest favor an injunction.

The public interest and the balance of the equities also weigh heavily in Plaintiffs' favor. First, as a general matter, a preliminary injunction preventing the enforcement of an unconstitutional law serves the public interest. *See, e.g.*, *Rodgers v. Bryant*, 942 F.3d 451, 458 (8th Cir. 2019). Second, in weighing the equities, on one side of the scale are the significant burdens imposed on Plaintiffs, who must compete and vote on an uneven playing field under a system that delegitimizes the very premise of representational government, while on the other side is the State, which, if an injunction is issued, will face minimal administrative burdens in ordering names on a ballot using a more equitable

system. Indeed, Minnesota already administers a fairer system in non-partisan and primary elections. *See* Guinn Decl., ¶ 23.

The public interest is particularly served by issuing an injunction in a case where voting rights are at issue because "[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" *The League*, 769 F.3d at 248 (citations omitted). If the Ballot Order Statute is not enjoined, it will directly interfere with the fundamental right to vote of thousands of Minnesota voters, including Plaintiffs, as well as the elections of the DFL candidates running in 2020 who are members of and supported by Plaintiffs. *See* Guinn Decl., ¶ 15; Schaumburg Decl., ¶ 9; Pavek Decl., ¶ 7 Sykes Decl., ¶ 7. Further, this is not an election law that operates in some way to protect the integrity of Minnesota's elections. To the contrary, the continued implementation of the law, which systemically advantages one major political party over all others, in races up and down the ticket and across the state, serves to damage the integrity of Minnesota's elections. *See* Pavek Decl., ¶ 6; Sykes Decl., ¶ 7; *see also Jacobson*, 411 F. Supp. 3d at 1277. For all these reasons, the public interest, too, strongly favors an injunction.

## IV.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court issue a preliminary injunction: (1) enjoining the Ballot Order Statute in advance of the 2020 general election, and (2) requiring the State to use a ballot ordering system that gives similarly-situated candidates an equal opportunity to be listed first on the ballot.

DATED: February 14, 2020       GREENE ESPEL PLLP

_s/_     _Sybil L. Dunlop_

Sybil L. Dunlop (Reg. No. 390186)
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
Facsimile: (612) 373-0929
E-mail: SDunlop@GreeneEspel.com

Marc E. Elias*
Alexi M. Velez*
Jyoti Jasrasaria*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
avelez@perkinscoie.com
jjasrasaria@perkinscoie.com

Kevin J. Hamilton*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
khamilton@perkinscoie.com

_Attorneys for Plaintiffs_

_*Admitted Pro Hac Vice_