# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Madeline Pavek, Ethan Sykes, DSCC, and DCCC,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>Steve Simon, in his official capacity as the Minnesota Secretary of State,<br><br>　　　　　Defendant. | Civil No. 19-CV-3000 (SRN/DTS)<br><br>**PARTIES' JOINT STATEMENT REGARDING POTENTIAL RELIEF** |

Madeline Pavek, Ethan Sykes, DSCC, and DCCC and Defendant Steve Simon, in his official capacity as the Minnesota Secretary of State (collectively, "the Parties"), submit this joint statement regarding potential relief in this action.

## SUMMARY AND RECOMMENDATION

Plaintiffs' Motion for Preliminary and Permanent Injunctive Relief (Dkt. #22) seeks an Order preliminarily and permanently enjoining the Secretary from implementing or enforcing Minn. Stat. § 204D.13, subd. 2, the statute at issue in this action. The motion further requests that the order "[r]equir[e] the Secretary to implement a non-discriminatory name rotation system that gives similarly-situated major-party candidates an equal opportunity to be placed first on the ballot." (Motion at 1-2.)

If the Court grants Plaintiffs' motion in whole or in part and enters an injunction, the Secretary and other Minnesota election officials will be capable of implementing a ballot-order procedure that gives similarly-situated major-party candidates an equal

opportunity to be placed first on the ballot in every partisan race on ballots in Minnesota's November 2020 general election. The computer hardware and software systems that Minnesota election officials use to create ballots and to report election returns, however, limit the range of options available to the state to implement such a procedure, as described more completely below. Because of the computer-system limitations described below, for the purposes of the November 2020 election the two options available to Minnesota election officials that would give similarly-situated major-party candidates an equal opportunity to be placed first on the ballot are the following:

1. **Precinct Rotation for All Candidates.** A procedure under which all candidates in each partisan race on the November ballot—that is, all major-party, minor-party, and independent candidates[1]—are rotated on a precinct-by-precinct basis so that each of the candidates appears in the first ballot position an approximately equal number of times as the other candidates in the same race, or

2. **Statewide Lottery Assignment for Major Party Candidates Only**. A procedure under which Minnesota's four current major parties are assigned, by lot, a single statewide ballot order that would govern the appearance of the parties' candidates in every partisan race in the November general election.

With regard to the November elections to be held in 2022 and in subsequent cycles, the Secretary and other Minnesota election officials, as well as the Minnesota Legislature,

---

[1] For the reasons explained below, the existing election technology does not permit precinct level rotation of *major party candidates only.* It will, however, allow precinct level rotation for *all candidates for a given office.*

2

would have substantially more flexibility in designing and implementing a ballot-order rotation procedure.

**Plaintiffs' Position:** Plaintiffs strongly believe that the rotation of all candidates on the ballot for partisan races on a precinct-by-precinct basis would be more appropriately tailored form of relief than a statewide lottery system and thus urge the Court to mandate such a system for the 2020 General Election to eliminate the inherent bias caused by the primacy effect. Utilizing a statewide lottery to assign ballot position for the major party candidates would retain all of the inherent unfairness the primacy effect awards to the party winning first position -- but would inflict that disadvantage *randomly* rather than *systematically* against the DFL and its candidates. Depending the vagaries of the coinflip, that unfair bias might be inflicted on the Republican Party, the Legal Marijuana Now Party, the Grassroots-Legalize Cannabis Party, or the DFL.[2] The lottery, in short, does nothing to eliminate the unfair advantage given to one party.

By contrast, precinct level rotation of all candidates would give all candidates for a given position (including minor party candidates) an approximately equal number of instances of being listed in first position, last position, and in intermediate positions. Such a system *eliminates entirely* positional bias against any party and allows the voters of Minnesota to express their preferences without unfair distortion arising from ballot

---

[2] Worse, the disadvantage would be inflicted *statewide* against the losing party's candidates in every election on the ballot. (Existing technology does not allow the state to assign ballot position randomly for each race individually, so one coin flip would control ballot assignment for every race).

3

placement. For that reason, Plaintiffs respectfully submit, precinct level rotation of all candidates for a given position is a more appropriately remedy, tailored to the constitutional violation at hand.

The parties have spent much of the past two weeks addressing these issues and the Secretary has presented a series of shifting positions, first insisting that precinct level rotation was simply impossible (notwithstanding that the state does precisely that for nonpartisan races), then conceding it *was* feasible after a deposition of a technical expert under oath and confirming that with the counties, and then *reversing course again* on the very day of this filing with the language included below. This newest eleventh hour concern is entirely speculative without foundation, expert or otherwise. The fact is, the software can accommodate a precinct level rotation (which has been confirmed with technical experts and the counties) and in fact it *has* been done both in Minnesota (in nonpartisan races) and in other states.

**Secretary's Position:** The Secretary strongly prefers the single statewide draw option because of the unavoidable uncertainty regarding the ability of county election systems to accurately and efficiently administer a statewide general election under the alternative rotation option. Put another way: Plaintiffs' preferred rotation option could result in an administrative disaster in the upcoming 2020 statewide elections, which could undermine not only the integrity of the election results but the confidence that Minnesotans have in the state's election system.

As explained below, any precinct-by-precinct rotation algorithm would need to be executed by ballot-tabulation hardware and software that is owned and operated by the election offices in each of Minnesota's 87 counties. Each county operates a tabulation system produced by one of three vendors. Representatives of counties using tabulation systems from each of the three vendors have notified the Secretary that they believe their vendor's tabulation system is capable of applying a rotation algorithm under which all candidates for a given office are rotated on a precinct-by-precinct basis. Neither the Secretary nor county election officials, however, have had an opportunity to test a rotation algorithm to verify that it can accurately and efficiently administer a statewide general election. Nor will there be a sufficient opportunity to conduct such a test between now and the August date by which a finished algorithm must be put into use. Without such testing, the Secretary cannot be confident that counties' systems will be able to accurately administer the general election.

By contrast, there is no doubt that a single statewide draw can be put into effect by the computer hardware and software that administers Minnesota's elections without any fear of error. Moreover, a single statewide draw that determines the order of major-party candidates indisputably meets the criteria for relief that Plaintiffs provided in their injunction motion: that is, it constitutes a "non-discriminatory name rotation system that gives similarly-situated major-party candidates an equal opportunity to be placed first on the ballot." (Mot. Prelim. & Permanent Inj. Relief 1-2 (Dkt. #22).)

## TECHNICAL DISCUSSION

State, county, and local officials administering Minnesota elections rely on two different computer systems: tabulating machines, which receive and count the ballots that voters cast, and the Election Reporting System (ERS), the centralized program module built and maintained by technical staff from the Office of Secretary of State that (1) transmits candidate data for county and local election officials and their private vendors to use in programming tabulating machines and printing ballots and then (2) receives election results from local jurisdictions and transmits them to the Office of Secretary of State. State law requires all partisan races in Minnesota elections to be reported through ERS. Minn. R. 8230.3950 (2017).

The Secretary has noted in prior filings that the tabulating machines used by particular counties in the state place limitations on the ballot-order rotation that these counties can implement. Specifically, 42 Minnesota counties currently use tabulating machines whose software is not capable of rotating the names of major-party candidates but *not* minor-party and independent candidates. (*See* Black Decl. ¶¶ 6-9 & Ex. 2, Dkt. #33.) In order to upgrade the software to a product that would permit a ballot order procedure that rotated major-party candidates alone, these counties would need to replace their tabulating machines, at a total cost of between $14.4 million and $27 million. (*Id.*) In light of the current health pandemic, the Secretary is now skeptical that these counties could perform the machine replacement in time for the 2020 general election at all. As a result,

the Parties agree that a ballot-order process that rotates major-party candidates alone is not practicable for elections in 2020.

Next, ERS has been built to conform to current Minnesota election law, which establishes a single party-based statewide order for candidates in partisan races. As a result, it could easily accommodate any process that established a single statewide party order, such as a single statewide random draw.

The system would, however, require restructuring and reprogramming in order to accommodate any relief that does not result in a static order of parties for use statewide. Based on experiments they conducted in early May, technical staff within the Elections Division of the Office of Secretary of State have determined that the system *could be* restructured and reprogrammed in a way that would permit precinct-by-precinct rotation of all candidate names (that is, major-party, minor-party, and independent candidate names) in each partisan election on the November 2020 ballot. Such reprogramming could be accomplished in July and August, permitting the Secretary to certify candidate names to county and local election offices in time for the August 18 and 19 certification deadlines that are established by Minnesota law. *See* Minn. Stat. §§ 204B.10, subd. 4, 204C.32, subd. 2, 204D.13, subd. 3 (2018).

While the Elections Division has determined that ERS could be structured to permit precinct-by-precinct rotation of candidate names, it is the tabulation systems owned and operated by Minnesota's 87 county elections offices that would need to perform the actual rotation, print ballots containing rotated candidate lists, and compile election returns for

transmission to the Office of Secretary of State. Minnesota counties each purchase hardware and software for their tabulation systems from one of three vendors: Elections Systems & Software ("ES&S"), Hart InterCivic Inc., and Dominion Voting Systems Corp. The Secretary and his staff have no firsthand knowledge regarding the capacity of the three vendors' systems to accommodate a precinct-by-precinct rotation of all candidates in each partisan race on the 2020 general-election ballot. In response, however, to inquiries the Office of Secretary of State made during early May, representatives of county elections offices that use each of the three vendors' systems have told the Office that *all three* vendors' systems are capable of accepting data from a restructured ERS and using it to put into effect a precinct-by-precinct rotation of all candidates in each partisan race in the 2020 general election.

Finally, Minnesota law requires tabulation machines and other hardware and software systems to be used in state elections to be certified by the Secretary before being used in a state election. Minn. Stat. § 206.58, subd. 1 (2018). Under ordinary circumstances, the changes to current voting systems that this Joint Statement contemplates to permit precinct-by-precinct rotation of candidate names are significant enough that they would require counties' tabulating machines and software to be recertified. Because the certification process takes several months, however, it will not be possible to certify system changes between now and the mid-August deadline for putting the changes into effect. As a result, if the Court orders relief in the form of precinct-by-precinct rotation, the Secretary anticipates that state election officials will be required to forgo the normal process of

system certification. Under such circumstances, the Secretary would endeavor to test the revised systems to the fullest extent possible within the time available.

| | |
|---|---|
| Dated: May 11, 2020 | Respectfully submitted, |
| For Plaintiffs: | GREENE ESPEL PLLP |

*s/ Sybil L. Dunlop*
Sybil L. Dunlop (Reg. No. 390186)
222 South Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
Facsimile: (612) 373-0929
E-mail: SDunlop@GreeneEspel.com

Marc E. Elias*
Alexi M. Velez*
Jyoti Jasrasaria*
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211
melias@perkinscoie.com
avelez@perkinscoie.com
jjasrasaria@perkinscoie.com

Kevin J. Hamilton*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
khamilton@perkinscoie.com

*Attorneys for Plaintiffs*

*\*Admitted Pro Hac Vice*

For Defendant:	KEITH ELLISON
Attorney General
State of Minnesota

*s/ Nathan J. Hartshorn*
NATHAN J. HARTSHORN
Assistant Attorney General
Atty. Reg. No. 0320602

445 Minnesota Street, Suite 1800
St. Paul, Minnesota 55101-2134
(651) 757-1252 (Voice)
(651) 297-1235 (Fax)
nathan.hartshorn@ag.state.mn.us

ATTORNEY FOR DEFENDANT