UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Madeline Pavek, Ethan Sykes, DSCC, and DCCC,<br><br>Plaintiffs,<br><br>v.<br><br>Steven Simon, in his official capacity as the Minnesota Secretary of State,<br><br>Defendant. | Case No. 19-cv-3000 (SRN/DTS)<br><br>**ORDER DENYING EMERGENCY MOTION TO STAY PRELIMINARY INJUNCTION** |

Alexi Machek Velez, Jyoti Jasrasaria, and Marc E. Elias, Perkins Coie LLP, 700 13th Street, N.W., Suite 600, Washington, D.C., 20005-3960; Kevin J. Hamilton, Perkins Coie LLP, 1201 Third Avenue, Suite 4900, Seattle, WA 98101-3099; Katherine M. Swenson and Sybil L. Dunlop, Greene Espel PLLP, 222 South 9th Street, Suite 2200, Minneapolis, MN 55402, for Plaintiffs.

Nathan J. Hartshorn, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101-2134, for Defendant.

Cameron Thomas Norris, Jeffrey M. Harris, and William S. Consovoy, Consovoy McCarthy PLLC, 1600 Wilson Boulevard, Suite 700, Arlington, VA 22209; Thomas H. Boyd, Winthrop & Weinstine, PA, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629, for Amicus Curiae Honest Elections Project.

Richard G. Morgan, Lewis Brisbois, 90 South 7th Street, Suite 2800, Minneapolis, MN 55402, for Intervenor-Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Intervenor-Defendants Donald J. Trump for President, Inc.'s, Republican National Committee's, National Republican Senatorial Committee's, National Republican Congressional Committee's, and Republican Party of

1

Minnesota's Emergency Motion to Stay (Doc. No. 91) this Court's preliminary injunction order, dated June 15, 2020 (Doc. No. 64), pending a decision by the Eighth Circuit on Intervenor-Defendants' interlocutory appeal (*See* Doc. Nos. 90, 95). For the foregoing reasons, the Court **DENIES** Intervenor-Defendants' motion.

## I.     BACKGROUND

On June 15, 2020, this Court preliminarily enjoined Defendant Minnesota Secretary of State Steve Simon (Defendant or "Secretary") from enforcing Minn. Stat. § 204D.13, subd. 2 (2018), otherwise known as the "Ballot Order" statute, which requires major political party candidates in Minnesota general elections to be listed on the ballot in reverse order based on the average number of votes that their party received in the last state general election. *See Pavek v. Simon*, No. 19-cv-3000 (SRN/DTS) (Doc. No. 64), 2020 WL 3183249, at *1, *29–30 (D. Minn. June 15, 2020). The Court instead ordered the Secretary to conduct a lottery whereby Minnesota's four current major political parties would be randomly assigned, by lot, a single statewide ballot order that would govern the appearance of the parties' candidates in every partisan race in Minnesota's 2020 General Election. *Id.* at *30.[1]

On June 22, 2020, seven days after the Court issued its preliminary injunction, Intervenor-Defendants moved to intervene as defendants under Fed. R. Civ. P. 24(a) and (b). (*See* Mot. to Intervene [Doc. No. 65] at 1.) On July 8, 2020, Plaintiffs and the Defendant Secretary filed a joint motion to stay this case until the conclusion of the 2021

---

[1]     The Court also denied the Secretary's Motion to Dismiss (Doc. No. 13) under Fed. R. Civ. P. 12(b)(6). *See Pavek*, 2020 WL 3183249, at *1, *29.

regular session of the Minnesota Legislature in order to give the Legislature time to address the very issues identified by the Court in its preliminary injunction order.  (*See* Joint Mot. to Stay [Doc. No. 85] at 1.)  Then, on July 9, 2020—prior to the Court ruling on Intervenor-Defendants' motion to intervene—Intervenor-Defendants filed a protective appeal of the Court's preliminary injunction order with the Eighth Circuit (*see* Doc. No. 90 (Notice of Appeal) & Doc. No. 95 (Transmittal of Appeal Letter)), and filed an Emergency Motion to Stay the Court's preliminary injunction pending the results of that appeal.  (*See* Emergency Mot. to Stay Pending Appeal ("Emerg. Stay Mot.") [Doc. No. 91].)  On July 12, 2020, the Court granted Intervenor-Defendants permissive intervention under Fed. R. Civ. P. 24(b).  *See Pavek v. Simon*, No. 19-cv-3000 (SRN/DTS) (Doc. No. 96), 2020 WL 3960252 (D. Minn. July 12, 2020).

Presently before the Court is Intervenor-Defendants' Emergency Motion to Stay this Court's preliminary injunction order pending this interlocutory appeal (Doc. No. 91).

## II.   DISCUSSION

### A.   Legal Standard

Pursuant to Fed. R. Civ. P. 62(d), "[w]hile an appeal is pending from an interlocutory order . . . the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  Importantly, the grant of such a stay is an extraordinary remedy because "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review,' and accordingly 'is not a matter of right, even if irreparable injury might otherwise result to the appellant.' "  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations omitted).  The decision to enter a stay order

pending the outcome of an appeal is " 'an exercise of judicial discretion,' and '[t]he propriety of its issue is dependent upon the circumstances of the particular case.' " *Id.* at 433 (citations omitted).

There are four factors to consider when evaluating whether to stay an order pending an appeal: " '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.' " *Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The Supreme Court has acknowledged that these factors "substantial[ly] overlap" with the factors governing preliminary injunctions. *Nken*, 556 U.S. at 434. Importantly, "[t]he moving party bears the *heavy* burden to establish that a stay should be granted in light of these four factors . . . ." *Jenson v. Minn. Dep't of Human Servs.*, No. 09-cv-1775 (DWF/BRT), 2020 WL 1130671, at *2 (D. Minn. Mar. 9, 2020) (citing *Nken*, 556 U.S. at 433–34) (emphasis added). The Court must "consider the relative strength of the four factors, 'balancing them all.' " *Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011) (quoting *Fargo Women's Health Org. v. Schafer*, 18 F.3d 526, 538 (8th Cir. 1994) (appendix)).

> **B.    A Stay Pending Appeal Is Not Warranted**
>
> > **1.    Intervenor-Defendants Have Failed To Make A Strong Showing They Are Likely To Prevail On The Merits**

The first factor—whether Intervenor-Defendants have made a " 'strong showing that [they are] likely to succeed on the merits[,]' " *see Brakebill*, 905 F.3d at 557 (quoting

4

*Hilton*, 481 U.S. at 776)—is the most important factor in the analysis. *See id.* ("The most important factor is likelihood of success on the merits . . . ."). While an applicant need not establish "absolute certainty of success" to satisfy this factor, *Knutson v. AG Processing, Inc.*, 302 F. Supp. 2d 1023, 1035 (N.D. Iowa 2004) (citation omitted) (internal quotation marks omitted), it is "not enough that the chance of success on the merits be 'better than negligible.' " *Nken*, 556 U.S. at 434 (citation omitted). At a bare minimum, "the movant is required to show 'serious questions going to the merits.' " *Knutson*, 302 F. Supp. 2d at 1035 (citation omitted) (internal quotation marks omitted). The burden remains "a heavy one and most movants will be unable to meet this standard." *Id.* (citations omitted).

Intervenor-Defendants argue that they are likely to prevail on the merits because (1) Plaintiffs lack standing, relying heavily on the Eleventh Circuit's recent decision in *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193 (11th Cir. 2020); and (2) because "there is a serious question whether Plaintiffs' complaint about the fairness of the ballot order is a 'nonjusticiable political question' " in light of the Supreme Court's recent decision in *Rucho v. Common Cause*, 139 S. Ct. 2484 (2019). (Intervenor-Defendants' Mem. in Supp. of Emergency Mot. to Stay ("ID Mem.") [Doc. No. 92] at 3.) Moreover, Intervenor-Defendants contend that, at a minimum, the Court's preliminary injunction order raises several other questions on which they are likely to succeed on appeal, including:

1. Whether Plaintiffs' claims should be resolved under [cases applying] the rational-basis test . . . or whether that precedent was implicitly overruled by cases applying the Anderson-Burdick test;

2. Whether a facially neutral ballot-order statute enacted by a Democratic legislature "explicitly favors some political parties at the expense of other political parties[]";

5

      3. Whether any "primacy effect" from ballot ordering imposes a "significant" burden on voting rights; and

      4. Whether the State has a legitimate interest in encouraging political diversity and reducing the power of incumbency.

(ID Mem. at 3–4.)

Plaintiffs respond that Intervenor-Defendants have failed to make a strong showing of their likelihood of success on the merits on appeal because, at most, they have established the "possibility of reversal based on the Eighth Circuit's possible adoption of non-binding precedent from other circuits . . . ." (Pls.' Mem. in Opp'n to Emergency Mot. to Stay ("Pls.' Opp'n Mem.") [Doc. No. 98] at 4.)  With respect to standing, Plaintiffs note that the Court exhaustively analyzed standing in its preliminary injunction order, and considered and distinguished *Jacobson* in response to amicus curiae Honest Elections Project's arguments. (*Id.* at 5 (citing *Pavek*, 2020 WL 3183249, at *12).)  With respect to justiciability, Plaintiffs note that Intervenor-Defendants rely on Judge W. Pryor's concurrence in *Jacobson*, 957 F.3d at 1213, for the proposition that this case presents nonjusticiable political questions, and that reliance on such non-binding precedent in a concurring opinion is simply insufficient to show a "strong likelihood" of success on the merits. (*Id.* at 6.)  Finally, Plaintiffs note that Intervenor-Defendants' list of "serious" questions contains no analysis as to why the Court answered any of those questions

6

incorrectly, "let alone *why* there is a strong likelihood that the Eighth Circuit would answer [those] questions differently." (*Id.* at 5.)[2]

The Court finds that Intervenor-Defendants have failed to make the necessary strong showing of their likelihood of success on appeal as to any of the questions or bases raised in their motion. With respect to standing, the Court notes that it analyzed in detail the DSCC's and DCCC's direct standing under both "diversion of resources" and "competitive" standing theories. *See Pavek*, 2020 WL 3183249, at *7–15. In doing so, the Court expressly distinguished the Eleventh Circuit's decision in *Jacobson*—the decision Intervenor-Defendants heavily rely upon in arguing that there is a strong likelihood that they will succeed on appeal—on *both* theories of standing. *See id.* at *12 (noting *Jacobson*'s reasoning as to "diversion of resources" standing was distinguishable on factual and procedural posture grounds); *Id.* at *14 n.13 (noting that *Jacobson* court "expressly *declined*" to address a competitive standing theory). Moreover, the fact that "other courts have adopted [different positions] provides no jurisprudential forecast"—much less a "strong showing" of a likelihood of success—"as to the outcome of [Intervenor-Defendants'] appeal to the [Eighth] Circuit." *In re Rose's Stores, Inc.*, 223 B.R. 487, 488 (E.D.N.C. 1998).

The same holds true for Intervenor-Defendants' arguments regarding justiciability. The mere possibility that the Eighth Circuit may choose to adopt reasoning from a

---

[2] Defendant Secretary opposes Intervenor-Defendants' emergency motion to stay, but does not address whether Intervenor-Defendants have made a strong showing of a likelihood of success on appeal. (*See* Def.'s Mem. in Opp'n to Emergency Mot. to Stay ("Def.'s Opp'n Mem.") [Doc. No. 99].)

*concurrence* in a non-binding decision from another circuit regarding the purported nonjusticiability of ballot order claims—which, the Court notes, conflicts with the Eighth Circuit's history of crafting judicial remedies for ballot order disputes, *see McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) (striking down incumbent-first ballot order statute)—does not amount to a "strong" showing of a likelihood of success on appeal. *In re Rose's Stores, Inc.*, 223 B.R. at 488. In fact, the concurrence that Intervenor-Defendants rely on was itself criticized by another judge on the *Jacobson* panel, who noted that *Rucho*'s reasoning was "specific to the gerrymandering context" because gerrymandering is one of the " 'most intensely partisan aspects of American political life.' " *Jacobson*, 957 F.3d at 1225 n.3 (J. Pryor, J., concurring in part and dissenting in part). That the Eighth Circuit might possibly choose this path on appeal does not amount to a "strong" showing of the likelihood of success on appeal because " '[m]ore than a mere possibility of relief is required.' " *Nken*, 556 U.S. at 434 (citation omitted).

Intervenor-Defendants' list of four "serious" questions also fails to present a "strong" showing of a likelihood of success on appeal. As an initial matter, Intervenor-Defendants offer essentially no argument as to how the Court's decisions on those questions were in error, or how any of those questions are likely to be resolved in their favor on appeal. *In re Wire Rope Corp. of Am., Inc.*, 302 B.R. 646, 648 (W.D. Mo. 2003) (denying stay where movant stated it was likely to prevail on the merits, "but [] advance[d] no basis for finding that the Court's Order was in error"). To the contrary, their list is "nothing more than a reiteration of the [issues] already considered by this court in [the preliminary injunction and motion to dismiss order]." *Knutson*, 302 F. Supp. 2d at 1036.

In fact, the first three questions listed by Intervenor-Defendants—namely, what should be the appropriate standard of review of the constitutionality of the Ballot Order statute, whether the statute favors some political parties at the expense of others, and whether the statute imposes a significant burden on voting rights—lack *any* argument as to how the Court erred in resolving those questions, or how the Eighth Circuit would resolve those questions differently.[3]  (*See* ID Mem. at 3.)

With respect to the fourth question—whether the State has a legitimate interest in encouraging political diversity and reducing the power of incumbents—Intervenor-Defendants cite to, but offer no argument about, two cases that purportedly run counter to the Court's analysis on that question. (*Id.* at 4 (citing *Randall v. Sorrell*, 548 U.S. 230, 248–49 (2006); *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 925 (6th Cir. 1998)).  Yet even a cursory review of those cases illustrates that neither is inconsistent with this Court's discussion of the issue.  In *Randall*, which involved a First Amendment challenge to campaign finance law, the Supreme Court struck down campaign contributions limits that were set so low that they effectively "harm[ed] the electoral process by preventing challengers from mounting effective campaigns against incumbent officeholders . . . ."  548 U.S. at 249.  Put another way, the low contribution limits

---

[3] The Court did in fact resolve each of those questions.  *See Pavek*, 2020 WL 3183249, at *22–23 (determining that *Anderson*/*Burdick* test, and not rational basis test, applied to evaluating likelihood of success on the merits but even if the rational basis test applied the statute failed to pass muster); *Id.* at *26 (noting the Ballot Order statute explicitly favors some political parties at the expense of others); *Id.* at *25 (concluding that any realistic appraisal of the Ballot Order statute's effects illustrated the significant burden it imposed on Plaintiffs' voting and associational rights).

constituted an *obstacle* to an effective challenge to an incumbent. *Id.* In its preliminary injunction order, this Court noted the laudable goal of pursuing political diversity and discouraging single-party rule, but drew a careful distinction between advancing those goals by "removing obstacles" to allow a small political party access to a ballot (which is permissible), and "giv[ing] an advantage *in an election* to a smaller party" in the name of political diversity (which is not). *Pavek*, 2020 WL 3183249, at *26. As such, the Court's discussion of any interest in political diversity is consistent with *Randall*; both acknowledged that the State has an interest in *removing* obstacles to ballot access. Yet neither this Court, nor the Supreme Court in *Randall*, condoned giving an *advantage in an election* to a smaller political party in pursuit of political diversity, which is precisely what the Ballot Order statute does. *Id.*

The Sixth Circuit's decision in *Miller* is equally inapposite to Intervenor-Defendants' argument. That case involved a challenge to a constitutional amendment to Michigan's constitution that imposed lifetime term limits on state legislators, which the Sixth Circuit explicitly distinguished from ballot cases decided under the *Anderson*/*Burdick* framework. *See Miller*, 144 F.3d at 924 (noting that ballot cases involve "the process of electing candidates" whereas term limit disputes implicate "the State's power to prescribe qualifications for its officeholders," and that each involved "rights and interests related to, but fundamentally different from, [each other]"). Even setting aside that distinction, however, the Sixth Circuit upheld the lifetime term limits amendment based on Michigan's "compelling interest in structuring its government, " not an interest in undercutting the power of incumbency. *Id.* at 923–24. In doing so, the Sixth Circuit

10

noted that deference to a state's justifications for *structuring* its own government was particularly important given that " 'the authority of the people of the States to determine the qualifications of their most important government officials . . . is a power reserved to the States under the Tenth Amendment and guaranteed them by [the Guarantee Clause] of the Constitution.' " *Id.* at 925 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991)). Accordingly, *Miller* does not contravene this Court's discussion of Minnesota's interests in the Ballot Order statute, which involved fundamentally different issues from term limits.

Finally, Intervenor-Defendants' citation to three cherry-picked decisions that have rejected purportedly similar challenges to ballot order statutes does not constitute a "strong" showing of a likelihood of success on appeal. (*See* ID Mem. at 4 (citing *Jacobson*, 957 F.3d 1193; *Mecinas v. Hobbs*, No. CV-10-05547-PHX-DJH, ___ F. Supp. 3d ___, 2020 WL 3472552 (D. Ariz. June 25, 2020); *DCCC v. Dunlap*, No. CV-20-29, 2020 WL 3441278 (Me. Sup. Ct. June 11, 2020) (Stokes, J.).) Indeed, Intervenor-Defendants fail to acknowledge numerous other decisions over the past fifty years that have upheld similar challenges to similar statutes.[4] Moreover, that "other courts have adopted [different

---

[4] *See, e.g.*, *McLain*, 637 F.2d at 1167 (holding ballot order statute granting incumbents first-listed position on ballot "burdens the fundamental right to vote possessed by supporters of the last-listed candidates, in violation of the [F]ourteenth Amendment" and collecting cases); *Jacobson v. Lee*, 411 F. Supp. 3d 1249, 1275 (N.D. Fla. 2019) (concluding that ballot order statute granting incumbents first-listed advantage on ballot to be unconstitutional "thumb on the scale in favor of the party in power"), *vacated on other grounds*, 957 F.3d 1193 (11th Cir. 2020); *Graves v. McElderry*, 946 F. Supp. 1569, 1578–79 (W.D. Okla. 1996) (concluding that Oklahoma statute giving incumbent first-listed position on ballot and accompanying positional advantage "infringes upon the careful and thoughtful voters' rights of free speech and association by negating the weight or impact of those citizen's votes for candidates for public office"); *Netsch v. Lewis*, 344 F. Supp. 1280, 1280–81 (N.D. Ill. 1972) (holding that state law granting "priority in listing on the

11

positions] provides no jurisprudential forecast"—much less a "strong showing" of a likelihood of success—"as to the outcome of [Intervenor-Defendants'] appeal to the [Eighth] Circuit." *In re Rose's Stores, Inc.*, 223 B.R. at 488.[5]

In sum, the Court finds that Intervenor-Defendants have failed to present a "strong" showing that they are likely to prevail on the merits of their appeal.

### 2. Intervenor-Defendants Have Failed To Show Irreparable Harm

The Court now turns to the second factor—whether Intervenor-Defendants will be irreparably harmed absent a stay—which is also "critical" to the Court's analysis. *Nken*, 556 U.S. at 434. Much like the required showing of a likelihood of success on the merits, a showing of irreparable injury requires more than mere possibility of injury. *Id.* at 434–35 ("[S]imply showing some 'possibility of irreparable injury[]' fails to satisfy the second

---

election ballot by reason of incumbency and seniority" violated non-incumbent plaintiff's "right to equal protection pursuant to the Fourteenth Amendment"); *Mann v. Powell*, 314 F. Supp. 677, 679 (N.D. Ill. 1969) (granting preliminary injunction barring incumbent-favoring tie breaking practices for ballot placement as a "purposeful and unlawful invasion of plaintiffs' Fourteenth Amendment right to fair and evenhanded treatment" and requiring either "drawing of candidates' names by lot or other nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot"), *aff'd*, 398 U.S. 955 (1970); *Gould v. Grubb*, 536 P.2d 1337, 1343 (Cal. 1975) ("[A] statute, ordinance or election practice which reserves [a first-listed ballot position] advantage for a particular class of candidates inevitably dilutes the weight of the vote of all those electors who cast their ballots for a candidate who is not included within the favored class." (citation omitted)).

[5]   The Court also notes that two of the three cases cited by Intervenor-Defendants are facially distinguishable. *Jacobson* is the Eleventh Circuit's decision that the Court has already discussed and distinguished above. *DCCC v. Dunlap*, on the other hand, is factually distinguishable because it dealt with a ballot order statute that required candidate names to be listed in alphabetical order, a markedly different method of ordering candidate names that the court described as "reasonable, neutral and non-discriminatory . . . ." No. CV-20-29, 2020 WL 3441278, at *9 (Me. Sup. Ct. June 11, 2020) (Stokes, J.).

factor." (citation omitted)). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a [stay]." *Rogers Grp., Inc. v. City of Fayetteville*, 629 F.3d 784, 789 (8th Cir. 2010). To establish irreparable harm, Intervenor-Defendants must show that "the harm [they face] is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996), *motion to vacate stay denied*, 519 U.S. 978 (1996). Stated differently, the irreparable harm alleged by Intervenor-Defendants "must be actual and not theoretical." *Packard Elevator v. ICC*, 782 F.2d 112, 115 (8th Cir. 1986).

Intervenor-Defendants argue that they will be irreparably injured without a stay because there is "insufficient time for appellate review by August 18—the date that [the Secretary] claims is the point of no return for setting [Minnesota's] ballot order." (ID Mem. at 4.) They contend that absent a stay, the ballot order for the November 2020 General Election will be determined pursuant to the lottery required under the preliminary injunction. (*Id.*) The irreparable harm, Intervenor-Defendants contend, is the loss of the "right to obtain judicial review of the preliminary injunction" and the subsequent harm to their electoral prospects and resources for the 2020 General Election. (*Id.*)

In response, Plaintiffs contend that any assertion of irreparable harm to Intervenor-Defendants' candidates' electoral prospects is utterly speculative because, under the lottery approach ordered by this Court, Intervenor-Defendants' candidates' chances of being listed higher in order than DFL candidates are the same as the DFL candidates' chances. (Pls.' Opp'n Mem. at 8.) Indeed, Plaintiffs note that Intervenor-Defendants' candidates are now being treated the *same* as DFL candidates. (*Id.*) Defendant Secretary makes the same

13

point, noting that because Republican candidates were originally listed third out of the four major parties' candidates on the November ballot, it is "at best entirely speculative that the random draw for statewide ballot order . . . would cause any injury to intervenors" because there is a "2-in-4 likelihood" that the Republican candidates' position on the ballot will actually improve, and a 1-in-4 chance that they will end up in the same place they were prior to the Court's order. (Def.'s Opp'n Mem. at 3.) Plaintiffs also argue that any harm in the form of insufficient time for appellate review—to the extent that is a harm at all—stems from Intervenor-Defendants' own delay. (Pls.' Opp'n Mem. at 7); *see also Pavek*, 2020 WL 3960252, at *4 (summarizing the significant delay by Intervenor-Defendants).

The Court finds that Intervenor-Defendants have failed to raise more than a mere possibility of irreparable harm. First, the Court rejects as impermissibly speculative and theoretical any assertion of irreparable harm stemming from Intervenor-Defendants' electoral prospects or claimed diversion of resources. As the Court noted in its intervention order, Intervenor-Defendants cannot rely on an assertion of diversion of resources because they have not offered any affidavits, declarations, or other evidence attesting to such a diversion. *Pavek*, 2020 WL 3960252, at *2. Additionally, with respect to electoral prospects, there is nothing inherently harmful in losing what the Court has found is likely an unconstitutional electoral advantage, *see Pavek*, 2020 WL 3183249, at *28, nor does a random drawing in which all major political parties are treated the same when determining candidate name order create irreparable harm. Indeed, there is a 50% chance that Intervenor-Defendants' ballot position will actually *improve*—i.e., they may be listed first or second on the ballot, as opposed to third—following Defendant Secretary's lottery

14

drawing, and a 25% chance that their position will remain the same as it was under the Ballot Order statute. (Def.'s Opp'n Mem. at 3.) The Court's determination that the Ballot Order statute is likely unconstitutional, coupled with the purely speculative *chance* that Intervenor-Defendants' candidates will be listed lower than DFL candidates on the ballot, does nothing more than raise the mere possibility of irreparable harm to Intervenor-Defendants, which is insufficient to warrant a stay. *See Nken*, 556 U.S. at 434–35 ("[S]imply showing some 'possibility of irreparable injury,' fails to satisfy the second factor.")

Second, with respect to the purported loss of sufficient time for judicial review, the Court notes that it has granted Intervenor-Defendants' motion to intervene, and they have already filed their appeal with the Eighth Circuit. (*See* Doc. Nos. 90, 95.) Accordingly, it is possible that the Eighth Circuit will review this Court's preliminary injunction order on an expedited timeline, mitigating this purported harm. In any event, however, any lack of sufficient time is largely Intervenor-Defendants' own fault. As the Court noted in its order granting permissive intervention, Intervenor-Defendants waited to intervene until nearly seven months after the case began, seven days after the Court issued its preliminary injunction order, and only mere weeks prior to the state-law deadline for certifying the order of candidates on the ballot. *Pavek*, 2020 WL 3960252, at *4. Moreover, they did not move for a stay of this Court's order until over half a month *after* they sought to intervene. (*See* Intervenor-Defendants' Motion to Intervene [Doc. No. 65] dated June 22, 2020; Emerg. Stay Mot. [Doc. No. 91] dated July 9, 2020.) And, as the Court has noted, it strains credulity to suggest that Intervenor-Defendants had any real basis to believe that

15

Defendant Secretary would appeal on two grounds—standing and justiciability—that he himself did not raise in seeking dismissal of Plaintiffs' case. *Pavek*, 2020 WL 3960252, at *4. This Court "decline[s] to grant a motion to stay . . . where 'the principal irreparable injury which [the movant] claim[s] that they will suffer"—here, a lack of time—"is injury of their own making.' " *Karsjens v. Jesson*, No. 11-cv-3659 (DWF/JJK), 2015 WL 7432333, at *6 (D. Minn. Nov. 23, 2015) (citation omitted).

### 3.     Harm To Other Parties and the Public Interest

Finally, the Court turns to the third and fourth factors—whether issuance of the stay will substantially harm the other parties interested in the proceeding, and where the public interest lies. *Brakebill*, 905 F.3d at 557 (citation omitted). Intervenor-Defendants argue that Plaintiffs will not be injured by a stay of the preliminary injunction order because the Ballot Order statute has, at most, an "attenuated" effect on the right to vote, and the Plaintiffs' delay in challenging the statute for nearly four decades evinces the lack of any harm to their electoral chances. (ID Mem. at 4–5.) They also assert that the public interest "weighs heavily" in favor of not disturbing the will of the people"—as set forth by their elected representatives in the form of duly-enacted legislation—as well as in favor of having consistent election laws "that are not changed by courts shortly before key deadlines in an election year." (*Id.* at 5.)

In response, Plaintiffs argue that Intervenor-Defendants' arguments are inherently contradictory because they assert irreparable injury from non-enforcement of the Ballot Order statute, yet simultaneously claim that enforcement of the statute will not cause harm to Plaintiffs because it has only an attenuated effect on Plaintiffs' right to vote. (Pls.' Opp'n

16

Mem. at 9.) Plaintiffs also note that the Court has already determined that Plaintiffs will suffer irreparable harm absent a preliminary injunction and that the public interest favors enjoining the Ballot Order statute. (*Id.* at 10–11.) For his part, Defendant Secretary notes that his interests would be harmed by a stay because any further change to the procedures for Minnesota's 2020 General Election "threatens serious harm to all election officials in Minnesota" by placing the "process for determining ballot order in the general election in doubt less than three weeks before [he] must certify that order." (Def.'s Opp'n Mem. at 4–5.) Moreover, Defendant Secretary argues a stay would harm the public interest because "Minnesota voters' ability to cast ballots"—including absentee voters—"and have them reliably counted rests on the election processes that Intervenors' last-minute litigation strategy threatens to upend." (*Id.* at 5.)

The Court finds that the harm to Plaintiffs and Defendant Secretary, coupled with the public interest, counsels against a stay. The Court has already held that Plaintiffs have established an imminent threat of irreparable harm absent an injunction barring enforcement of the Ballot Order statute, and that the public interest favors protecting Plaintiffs' constitutional rights. *Pavek*, 2020 WL 3183249, at *21–22, *27. Moreover, the Court finds Intervenor-Defendants' assertion that a stay of the preliminary injunction order will not harm Plaintiffs to be inherently contradictory: they cannot claim that they will suffer irreparable harm from non-enforcement of the Ballot Order statute, yet simultaneously argue Plaintiffs will suffer no harm from enforcing the statute. And Intervenor-Defendants do not address at all the harm to Defendant Secretary that will likely result from a last-minute shift in procedures used in the 2020 General Election.

Intervenor-Defendants' other arguments also lack merit. Their argument that the Ballot Order statute's impact on voting rights is attenuated ignores this Court's finding that the practical burden the statute imposes on Plaintiffs' constitutional rights is nothing less than significant. *Id.* at *25. Similarly, Intervenor-Defendants' assertion that Plaintiffs' delay in challenging the statute evinces a lack of harm to their interests ignores this Court's explicit rejection of that very same argument. *Id.* at *22 (rejecting Secretary's argument that Plaintiffs' purported delay undermined any harm). Finally, while the public certainly has an interest in having the legislation enacted by their representatives enforced, it also has an interest in ensuring that constitutional rights are protected. *See id.* at *27. Because " 'the determination of where the public interest lies [] is dependent on the determination of the likelihood of success on the merits of the [constitutional] challenge,' " *Id.* (citation omitted) (internal quotation marks omitted), and because the Court has already held that the Ballot Order statute is likely unconstitutional, any interest the public has in enforcing its representatives' duly-enacted legislation necessarily bows to the public interest in protecting constitutional rights.

Ultimately, the Court finds that after "consider[ing] the relative strength of the four factors," and " 'balancing them all[,]' " *Brady*, 640 F.3d at 789 (citation omitted), Intervenor-Defendants have failed to meet "the *heavy* burden to establish that a stay should be granted . . . ." *Jenson*, 2020 WL 1130671, at *2 (emphasis added).

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Intervenor-Defendants' Emergency Motion to Stay this

18

Court's June 15, 2020 preliminary injunction order pending the results of their appeal (Doc. No. 91) is **DENIED**.

**IT IS SO ORDERED.**

Dated: July 16, 2020                                     s/Susan Richard Nelson
                                                         Susan Richard Nelson
                                                         United States District Judge