# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2410
_____

Madeline Pavek; Ethan Sykes; DSCC; DCCC

*Plaintiffs - Appellees*

v.

Steve Simon, in his official capacity as the Minnesota Secretary of State

*Defendant - Appellee*

v.

Donald J. Trump for President, Inc.; Republican National Committee; National Republican Senatorial Committee; National Republican Congressional Committee; Republican Party of Minnesota

*Intervenors below - Appellants*

------------------------------

Honest Elections Project; State of Texas; State of Georgia; State of West Virginia

*Amici on Behalf of Appellants*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: July 24, 2020
Filed: July 31, 2020
[Published]

———————

Before LOKEN, SHEPHERD, and GRASZ, Circuit Judges.

———————

PER CURIAM.

Two Minnesota voters and two political committees challenge section 204D.13(2) of the Minnesota Statutes, which requires major party candidates be listed on the ballot in reverse order of the parties' electoral showing in the last general election.[1] According to the plaintiffs, the law irrationally disadvantages their preferred political candidates and is therefore unconstitutional. The district court preliminarily enjoined the law's enforcement, prescribing instead a lottery-based system of ordering candidates on Minnesota ballots. Other political committees intervened and moved to stay the injunction.

We first address the issue of standing. The plaintiffs have put forth a showing of Article III standing sufficient for this stage in the litigation. They allege a cognizable and redressable injury fairly traceable to section 204D.13(2) — namely, that the statute

---

[1] The placement of major political party candidates on the ballot is determined by the average number of votes — total votes for party candidates divided by the number of party candidates — received by that party in the state's last general election. Minn. Stat. § 204D.13(2). Because Democratic candidates received more votes on average in 2018, Republican candidates will be listed before their Democratic counterparts in the upcoming election. Similarly, candidates of the remaining major parties — the Grassroots-Legalize Cannabis Party and the Legal Marijuana Now Party, each of which received fewer votes on average than Republican and Democratic candidates — will appear higher on the ballot than both Republican and Democratic candidates.

-2-

violates the Fourteenth Amendment insofar as it unequally favors supporters of *other* political parties. *See McLain v. Meier*, 637 F.2d 1159, 1167 (8th Cir. 1980) (recognizing that a state's ordering of candidates on a ballot implicates equal-protection concerns).[2] We have adjudicated the merits of such claims before and have comfortably employed judicially manageable standards in doing so. *See id.* at 1165–67; *cf. Rucho v. Common Cause*, 139 S. Ct. 2484, 2507–08 (2019) (rejecting a political gerrymandering claim as nonjusticiable for want of judicially manageable standards).

When determining whether to issue a stay pending appeal, we must consider (1) whether the stay applicant has strongly shown likely success on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the stay will substantially injure other interested parties; and (4) the public's interest. *Brakebill v. Jaeger*, 905 F.3d 553, 557 (8th Cir. 2018). While a showing of irreparable injury is required, the most important factor is likelihood of success on the merits. *Id.*

The intervenors have shown that, absent a stay, they would be irreparably injured. The stay and the injunction mirror each other — if the lack of an injunction injures the plaintiffs, the lack of a stay injures the intervenors. One party's candidates will necessarily appear on the ballot before the other's.[3] And absent a stay, the

---

[2]The injury-in-fact alleged by the individual-voter plaintiffs is suspect insofar as they already plan on voting for candidates of their preferred party. Their ability to vote for their preferred candidates seems largely unaffected by section 204D.13(2), and general complaints about electoral outcomes are nonjusticiable. *Gill v. Whitford*, 138 S. Ct. 1916, 1931 (2018). But we need not determine whether the individual-voter plaintiffs have standing because the political committees do. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) ("For a legal dispute to qualify as a genuine case or controversy, at least one plaintiff must have standing to sue.").

[3]The district court determined that intervenors showed no likelihood of irreparable injury, since its remedy provided an equal chance of each party's candidates

intervenors would lack any meaningful right to appeal the preliminary injunction, given that the ballot order decisions must be made by mid-August.

We thus turn our focus to the intervenors' likelihood of success.  Because section 204D.13(2) implicates the right to vote, *McLain*, 637 F.2d at 1166, we apply the so-called *Anderson/Burdick* standard when evaluating the statute's constitutionality. *See Burdick v. Takushi*, 504 U.S. 428, 433 (1992) ("Each provision of a code . . . 'inevitably affects — at least to some degree — the individual's right to vote and his right to associate with others for political ends.'") (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)).  Under this standard,

> [a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* at 734 (quoting *Anderson*, 460 U.S. at 789).

Upon considering the character and magnitude of the asserted injury, we observe that section 204D.13(2) does not in any way restrict voting or ballot access. *Cf. Anderson*, 460 U.S. at 786; *Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 664–65 (1966).  The statute neither systematically advantages incumbents, *see Jacobson v. Florida Sec. of State*, 957 F.3d 1193, 1198 (11th Cir. 2020) (discussing Florida's law placing the incumbent governor's party first), nor advantages the state's most popular party, *see McLain*, 637 F.2d at 1166.  Rather, it favors candidates from parties *other*

---

appearing first.  In part because it found section 204D.13(2) unconstitutional, the district court brushed aside the fact that the injunction injured the intervenors insofar as their favored candidates lost their ballot placement position established by the law.

than the one that received the most votes (on average) in the last general election. Minn. Stat. § 204D.13(2).

The state offered several justifications for its ballot-order statute: "(1) encouraging political diversity; (2) countering the 'incumbent' effect; and (3) discouraging sustained single-party rule." According to the district court, these goals — however laudable — cannot be pursued by the state at the expense of objective even-handedness. As such, the court concluded, section 204D.13(2) likely cannot withstand *any* judicial scrutiny — not even rational basis review.

The district court's decision rests on a misunderstanding of *McLain*. We found a constitutional violation in *McLain* "because the justification offered for North Dakota's ballot arrangement [was] unsound." 637 F.2d at 1167. The state said it had "an interest in making the ballot as convenient and intelligible as possible for the great majority of voters." *Id.* But this justification simply begged the question. When asked why it favored the popular incumbents over other candidates, the state essentially responded, "because they are popular incumbents." *Id.* Thus, North Dakota in *McLain* proposed *no* legitimate state purpose advanced by its incumbent-first statute.

Here, however, Minnesota's justifications are rationally related to placing political parties in reverse order of popularity. By design, the statute cannot advantage the state's predominant party. If ballot primacy affects a party's electoral chances, then section 204D.13(2) cannot be used to tighten the predominant party's grips on the levers of power. Nor can incumbents count on using the statute's operation to its advantage (though occasionally incumbents from non-dominant parties may benefit from the law). *Cf. Jenness v. Fortson*, 403 U.S. 431, 438 (1971) (upholding a law advantaging candidates from established parties in part because it "[did] not operate to freeze the political status quo"). And being placed first on the ballots gives less popular parties visibility, thus promoting political diversity.

In any case, under the *Anderson/Burdick* standard, we find that the burdens imposed by section 204D.13(2) do not unconstitutionally violate the rights asserted. We recognize that the blind ballot-ordering process prescribed by the district court would eliminate *any* law-based favoritism and would thus more easily satisfy the Constitution's equal protection guarantee. But that is not what the law requires. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358, 367 (1997) (noting that the Constitution does not forbid all forms of political-party favoritism). The individual-voter plaintiffs' rights are hardly (if at all) implicated by section 204D.13(2), and the political committees' rights are only marginally affected by the statute. Section 204D.13(2) articulates one of the few ways Minnesota can organize its ballots without either favoring predominant parties or abandoning the task of ballot-organizing to random chance. *Cf. Anderson*, 460 U.S. at 788 (recognizing a state's interest in ensuring "some sort of order, rather than chaos," in its elections) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). In our preliminary review, we find section 204D.13(2)'s ends legitimate and its burdens minimal. It is unlikely that section 204D.13(2) violates the Fourteenth Amendment.

The district court granted the preliminary injunction, in part, because "it is always in the public interest to protect constitutional rights." But we find no constitutional violation. And while the state no longer challenges the preliminary injunction, it is in the public interest to uphold the will of the people, as expressed by acts of the state legislature, when such acts appear harmonious with the Constitution. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.") (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) (alteration in original)).

We therefore grant the motion to stay the injunction pending appeal.

_____